LUCINDA RUTHERFORD, Respondent, *v.* SAMUEL A. HOLMES, Appellant.

A court of a justice of the peace has no power to adjudge a person in contempt and to punish him therefor, save in the cases prescribed by statute. (ANDREWS and MILLER, JJ., dissenting.)

In order to give such court jurisdiction to punish a witness for contempt for refusing to answer a proper and pertinent question, there must be an oath of the party, at whose instance he attended, of the materiality of the testimony (2 R. S., 274, § 279), and a justice is liable in an action for false imprisonment, at the suit of one imprisoned under and in pursuance of his warrant of commitment for such a contempt, where it does not appear in the warrant or by the evidence that such an oath was made. (ANDREWS and MILLER., JJ., dissenting.)

It is immaterial that the witness was a party sworn in his own behalf that the question he refused to answer was asked upon cross-examination, and that it was therefore impossible to meet the requirements of the statute; this does not authorize a disregard of it. (ANDREWS and MILLER, JJ., dissenting.)

*It seems* that in case of such refusal to answer, the remedy of the opposite party is to move to strike out the direct-examination.

(Argued May 31, 1876; decided June 13, 1876.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, setting aside a non-suit and granting a new trial. (Reported below, 5 Hun, 31.)

This was an action for false imprisonment.

The defence was that defendant was a justice of the peace of the town of Colchester, Delaware county, and that he caused plaintiff to be imprisoned for contempt in refusing to answer a question put to her, as a witness, in an action on trial before him, as such justice.

Plaintiff's evidence tended to show that plaintiff was defendant in a suit pending before defendant, as justice, and was sworn as a witness in her own behalf, and upon cross-examination was asked a question which she refused to answer. Defendant thereupon issued his warrant of commitment, reciting the facts, alleging that the question was pertinent and

proper, and directing that she be taken to and confined in jail until she submits to answer, etc. Under and by virtue of the warrant she was taken to jail and confined until discharged by order of defendant. At the close of plaintiff's evidence defendant's counsel moved for a nonsuit, which was granted. Exceptions were ordered to be heard at first instance at General Term.

*Wm. Gleason* for the appellant. The justice had authority to commit the witness for refusing to answer. (Ventris, 1; 1 Bays' R., 1; 3 Cai. R., 170; 10 J. R., 393; 1 Stra., 420; 2 R. S., 226, § 1; 426, § 1 [5th ed.]; *Robbins* v. *Gorham*, 26 Barb., 586, 593; *In re Watson*, 5 Lans., 470; *People* v. *Fancher*, 2 Hun, 226, 232, 233; 1 Black. Com., 59, 60; 1 Kent's Com., 462–464; 6 Hill, 630; 13 N. Y., 81.) All objections which might have been made were waived by not being made at the time. (24 Wend., 339; 5 Hill, 468; 6 id., 47; 3 N. Y., 511; 2 Den., 169; 7 How., 42; 12 Barb., 9–19; 4 Sandf., 409–412; 2 Wend., 485; 23 Barb., 444; 42 id., 39; 5 Lans., 318.) The act complained of was a judicial determination in a proceeding in which the justice had jurisdiction, and he was not liable for his judgment, however erroneous or wrongful it may have been. ( *Weaver* v. *Devendorf*, 3 Den., 120; 1 Cow. Tr., 39 [3d ed.]; T. & C. R., §§ 17, 18, 1247; 3 Den., 117–120; 1 Wait L. and Pr., 737; 2 id., 645, 647; 5 J. R., 282; 9 id., 395; 17 id., 145; 8 Cow., 178; 3 id., 206; 37 N. Y., 513; 35 id., 238; 43 id., 186; 4 Abb. [N. S.], 469; 24 Barb., 419; 6 id., 621; 6 Hill, 44; 7 Wend., 200; 24 N. Y., 75; 7 Abb. Pr., 96; 29 Barb., 626; *Moor* v. *Ames*, 3 Cai., 170; *Mather* v. *Hood*, 8 J. R., 45, 47, 51, 70, 72; *Smith* v. *Worden*, 4 Hun, 787; *Field* v. *Parker*, id., 343.)

*L. L. Bundy* for the respondent. Defendant had no authority to issue the commitment until the statutory requirements were complied with. (2 Stat. at Large, 282, § 279; 281, § 274; *Way* v. *Carey*, 1 Cai., 191; *Janes* v. *Reed*, 1 J. Cas., 20; *Wells* v. *Newkirk*, id., 228; *Bigelow* v. *Stevens*, 19 J.

R., 39; *People* v. *Koller*, 7 Hill, 39, 41; *Horton* v. *Auch-moody*, 7 Wend., 200; *Evertson* v. *Sutton*, 5 id., 281; *Yates* v. *Lansing*, 5 J. R., 282; *Blythe* v. *Tompkins*, 2 Abb., 468; *Clark* v. *Holdridge*, 58 Barb., 61, 71; *Comfort* v. *Fulton*, 39 id., 56; *Percival* v. *Jones*, 2 J. Cas., 49; *Bigelow* v. *Stearrs*, 10 J. R., 39; *Sprague* v. *Eccleston*, 1 Lans., 74; *Barnes* v. *Harris*, 4 N. Y., 375; *People* v. *Webster*, 14 How., 246, 247; *Gold* v. *Bissell*, 1 Wend., 213; *Hall* v. *Munger*, 5 Lans., 103.) Defendant was bound to show affirmatively that he had jurisdiction. (*Hawley* v. *Butler*, 48 Barb., 101; *Comfort* v. *Fulton*, 13 Abb., 276; *Brackett* v. *Eastman*, 17 Wend., 32; *Wood* v. *Terry*, 4 Lans., 84; Phil. Ev. [Edw. ed.], C. and H. Notes, 604, 605, 813, 814.) Plaintiff had a right to show that she did not in fact refuse to answer the questions put. (*Scott* v. *Ely*, 4 Wend., 555; *People* v. *Cassels*, 5 Hill, 165; *Starbuck* v. *Murray*, 5 Wend., 158; *Davis* v. *Packard*, 6 id., 332; *Blovni* v. *Burdick*, 1 Hill, 139; *Hurd* v. *Shipman*, 6 Barb., 623, 624; *Chemung Canal Co.* v. *Judson*, 8 N. Y., 259; *Dobson* v. *Pearce*, 12 id., 164; *Hatcher* v. *Rochelean*, 18 id., 92; *Bolton* v. *Jack*, 6 Robt., 166, 198–200.)

Folger, J. The point made by the plaintiff, that the court erred at Circuit, in not holding that the defendant, to justify his act, was bound to show in defence and affimatively, that he was a justice of the peace *de jure*, is not well taken. The opening of the plaintiff's counsel, and the testimony of the plaintiff, show that it was substantially conceded, that he had the title to the office and was in the exercise of the powers and jurisdiction of it.

The important question in the case is, whether the defendant, upon the facts now shown, had the power to commit the plaintiff for contempt. That he had jurisdiction of the person of the plaintiff, and of the subject-matter then pending, did not give him judicial authority to adjudge her guilty of a contempt, and to imprison her therefor. To have that authority, there must have arisen before him, facts which gave him power to consider of the question whether there

had been a contempt committed by her. When facts arose which gave him that power, he had a right to adjudicate upon them, and is not liable to an action, though he may have held erroneously as matter of law. So that the inquiry is, was there a state of facts existing, upon which could be based a power to consider and determine whether the defendant was in contempt?

It is not contended by the learned counsel for the respondent, but that a justice of the peace had that power at common law, upon a state of facts such as the defendant claims existed. Have the provisions of the statutes taken it away, or so restricted that power, as that it may be exercised only in the cases prescribed by written law? Clearly, if this is conceded to be a contempt known to the law as a criminal contempt, or one to be treated as a criminal contempt, the statutes are definite in taking away the power to deal with it as such. 2 Revised Statutes, page 273, section 274, specifies the acts which a justice of the peace may punish as for a criminal contempt. The conduct imputed to the plaintiff in this case is not within that classification. And it is of some import to note, that in the corresponding provision relating to courts of record, the statutes have given to them the power to punish, as for a criminal contempt, the refusal of any person, when sworn as a witness, to answer any legal and proper interrogatory. (2 R. S., p. 278, § 10, subd. 5.) This is indicative of a legislative conception that such refusal is properly punishable as for a criminal contempt, and it is, also, indicative of the legislative purpose not to confer the power so to do upon a justice of the peace, or to leave it with him. It is still more indicative of that purpose, that the legislature has especially declared in what condition of things a justice of the peace may punish, as for contempt, a refusal to answer of a person who is a witness, and has prescribed the manner in which the punishment may be inflicted, and the kind and extent of it. It is also significant, that the legislature, so far as it has in general terms enacted for proceedings as for contempts to enforce civil remedies, and to protect the

rights of parties in civil action, has confined its action to courts of records (2 R. S., p. 534, § 1, *et seq.*), and has here, again, provided for the punishment of persons, who, as witnesses, refuse to answer. (Id., subd. 5.) It is to be noted, too, that in the cases thus provided for which may usually arise in the court of a justice of the peace, there are specific provisions of statute relating to that court alone, pointing out the facts upon which the contempt may be adjudged, the mode of inflicting it, and the kind and extent of it. (2 R. S., p. 274, §§ 279, 280; id., p. 241, § 83, *et seq.*; id., p. 245, § 112.) In addition to the indication from these enactments, is that furnished by 2 Revised Statutes (p. 225, § 1), in which necessary general powers are given to that court only where no special provision is likewise made by law. Besides that, it was the expressed purpose of the revisers, and hence of the legislature, to define the power of a justice of the peace, to fine and imprison for contempts, and to regulate the exercise of it. (5 Edmond's Statutes at Large, pp. 425, 426; Reviser's notes to § 274, and §§ 10 to 15.) We incline to the opinion that a court of a justice of the peace, has no power to adjudge a person in contempt, and to punish him therefor, save in a case, stated in the statute law.

But it is clear that the defendant did not assume to have authority save under the statute above cited. (2 R. S., 274, § 279.) The warrant of commitment is, in its terms, based thereupon. It states that the plaintiff was sworn as a witness, was asked a proper and pertinent question, and refused to answer to it. It commanded the close confinement of the plaintiff until she should submit to answer the question or be discharged according to law. As that section prescribes as a prerequisite that there shall be an oath of the materiality of the testimony, and as it does not appear either from the warrant, or the evidence in this case, that such an oath was made, the defendant had no judicial authority to adjudge the plaintiff guilty of a contempt. The imprisonment ordered by him was unlawful, and he is liable to her in damages for his act in ordering it.

It is claimed that this requirement of the statute does not apply to a refusal to answer a pertinent and proper question, but only to a refusal to be sworn; and, though the grammatical construction of the sentence demands that it be applied to one as well as to the other, inasmuch as both are its antecedents, yet that there may be, in interpretation, a transposition of the parts of the sentence so that the latter shall alone be an antecedent. This would be doing violence to the formation of the sentence as it was left by the law-maker. It would be doing violence to the sense as well. It is no more needful, in abstract view, to found a proceeding to punish for contempt on a refusal to be sworn, that all the testimony sought from the witness should be material and be made so to appear by affidavit, than to found such proceeding on a refusal to answer a single question. The object of giving the power to punish is to prevent a hindrance of a civil remedy. And unless the refusal to answer a single question works such hindrance, the reason for giving the power does not exist. So in that case, as well as in that of a refusal to be sworn and testify at all, it is of importance that such ill effect be the result, and be made so to appear.

The act of refusing to answer, and of refusing to be sworn, are alike in their nature and effect, and the legislature has treated them as alike. They each affect the same party, viz.: he for whom the witness is called, or who puts the question.

That the making of the oath was impossible in this case, does not drive us to the construction contended for. It might happen that a casual bystander in court would refuse to be sworn. He would not, in the language of the section, be a witness attending before the justice at the instance of a party. It would then be impossible for the oath to be made. Yet we may not for that reason alter the statute.

It is true that, in this case, the oath could not be made, as the respondent, the witness, was the defendant in the Justice's Court, was put upon the stand in her own behalf, and was under cross-examination by her opponent, the plaintiff there,

when she refused, as is alleged, to answer a pertinent and proper question, and it was impossible for the plaintiff to meet the requirement of the statute. But this does not authorize a disregard of the plain demand of the law. The right of a party to be a witness in his own behalf has been given by law since the statutes concerning contempts were adopted, and it is not surprising that the earlier statutes do not cover all the cases arising under the later.

It is not for us to point out the mode in which the plaintiff in the action on trial before the defendant could have protected his rights. In a court of record, if the cross-examination of a witness fails to be complete for any cause not assented to by the party cross-examining, the direct-examination will, on motion, be stricken out. We see no reason why the same rule will not hold in the court of a justice of the peace.

This view of the case is conclusive of this appeal, and there is no need of considering several questions raised by the plaintiff.

The order of General Term should be affirmed, and there should be judgment absolute for the respondent on the appellant's stipulation.

All concur, except ANDREWS and MILLER, JJ., dissenting.
Judgment affirmed.