444    PEOPLE ex rel. WEBSTER v. VAN TASSEL.

Third Department, May Term, 1892.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GROVE WEBSTER, Respondent, v. WILLIAM T. VAN TASSEL, Sheriff of Ulster County, Appellant.

*Contempts — a power to subpœna a witness given to a committee of a common council — it is a contempt to refuse to testify — not a contempt to refuse to produce papers.*

The charter of the city of Kingston (Laws of 1872, chap. 150, § 32) gives to a committee of its common council power in certain cases to issue a summons "to any person to appear and testify before them," and provides that any person who shall refuse to attend, or to be sworn or "to answer any proper or pertinent question" may be committed to the county jail, etc., but makes no provision for a case where a witness fails to produce books which he has been subpœnaed to produce.

Such a committee of the Kingston common council directed, by subpœna, the city treasurer to produce certain bank books showing the accounts existing between himself, as city treasurer, and a certain bank, and also other documents. The city treasurer appeared and testified, but refused to produce the books and documents; for which refusal he was punished as for a contempt.

In proceedings taken by *habeas corpus* to review his commitment:

*Held*, that as there was no provision in the city charter which authorized, in terms, the committee to require the production of the books, that the existence of such power would not be implied.

---

* On a further appeal to the Court of Appeals the order was affirmed, with costs on opinion of Fursman, J., below.— [Rep.

PEOPLE ex rel. WEBSTER v. VAN TASSEL.     445

THIRD DEPARTMENT, MAY TERM, 1892.

That the power to punish for contempt would not arise by implication or from the necessity of the case.

That, in this regard, a statute must be most strictly construed, and cannot be extended in any respect.

APPEAL by William T. Van Tassel, Sheriff of Ulster county, from an order of the county judge of Ulster county, entered in the office of the clerk of the county of Ulster on the 3d day of February, 1892, discharging, in *habeas corpus* proceedings, Grove Webster from imprisonment. The facts appear in the opinion of the county judge of Ulster county.

The opinion of the county judge of Ulster county, referred to in the opinion of the General Term, is set forth in the note.*

---

*By a resolution of the common council of the city of Kingston, adopted January 15, 1892, it was

*Resolved,* That two members of the common council be added to the committee to investigate the city treasurer's accounts in the place of Aldermen Murray and Dolson, whose terms of office have expired, and that said committee have full power to send for persons and papers.

The chair appointed, in addition to the mayor, Alderman Brinnier and the city clerk, the other members being Aldermen Dederick and Tubby.

Claiming to act under the provisions of the city charter, Laws of 1872, chapter 150, section 32, this committee issued a summons to the relator by which he was summoned " to attend before the committee at the mayor's office in the City Hall on Wednesday, January 27, 1892, at 3 o'clock P. M., there to give such information touching the subject of inquiry as might be in his possession;" and he was further directed to "bring with him before said committee all bank-books had and held by him as city treasurer of the city of Kingston, and containing the record of transactions between such officer and the First National Bank of Rondout, relating to the general fund account, bond and coupon account and all other accounts, and such other documents in his custody as might be required in the investigation of the said subject."

In obedience to the command of the summons the relator appeared at the time and place therein specified, and was sworn and examined as a witness by the members of the committee, but refused to produce any books or documents.

Thereupon Alderman Dederick, a member of the committee, presented an affidavit to the recorder of the city of Kingston, setting forth the refusal of the relator to produce such books, and an order of attachment was issued by the recorder directed to the sheriff, commanding him " to attach the relator and forthwith bring him before the recorder, at his office in the City Hall, to answer for his refusal to obey the said summons, and bring the said books and attend and appear and testify as thereby required." The relator was arrested by the sheriff and taken before the recorder, who thereupon adjudged that he had failed and refused to attend and appear as required by the summons, and who forthwith, by an order under his hand, committed the body of the relator to the custody of the

**446** PEOPLE ex rel. WEBSTER *v.* VAN TASSEL.

THIRD DEPARTMENT, MAY TERM, 1892.

*G. D. B. Hasbrouck*, for the appellant.

*D. M. De Witt*, for the respondent.

PUTNAM, J.:

The opinion of the court below contains a full statement of the facts of the case and a learned and able discussion of the questions involved. In addition to what he has said, I will only make a few suggestions regarding one phase of the case.

The proceedings which resulted in the order of the recorder,

sheriff, commanding the sheriff that he keep him in close custody in the county jail of the county of Ulster for a period of twenty days, or until he " shall attend and appear in obedience to such summons directing him to bring the books aforesaid before the said committee."

It is claimed by the relator that the action of the committee, of Alderman Dederick and of the recorder is absolutely void, and that his detention is illegal for three reasons:

*First.* That the committee is illegally constituted, in that the city clerk is made a member thereof without authority of law.

*Second.* In that the warrant committing the relator to the custody of the sheriff is fatally defective; in that it provides for his perpetual imprisonment in case of his failure to comply with the order of the committee.

*Third.* In that the recorder had no power to commit him to the county jail for refusing to produce the books and papers specified in the summons.

There is possibly some question whether the action of the committee is not invalidated by the fact that the city clerk, who is in no sense, under the charter, a member of the common council, was made one of its members.

But it is not necessary to discuss that point.

Upon a careful examination of the statute and the authorities, I am rather of the opinion that the warrant of the recorder committing the relator to the custody of the sheriff is fatally defective, and that under the provisions of the *habeas corpus* act the relator would be entitled to his discharge upon that ground alone. (Code of Civil Pro., § 2033, sub. 3.)

However correct these views may be, it was stated on the argument by counsel for the relator, and by the corporation counsel, that what was most desired was the opinion of the court as to the power of the recorder to commit the relator for a refusal to produce books and papers.

It was suggested by the court, in order to avoid circumlocution of proceeding, that the relator waive the point as to the claimed illegality of the organization of the committee and the defective character of the recorder's warrant, and that a stipulation of waiver be entered upon the record in order that the more important matter involved could be passed upon as the only point of the case. This, however, was not assented to. The proceeding is a special one, under the provisions of section 32 of the charter of the city, which is as follows:

"The common council, or any committee thereof, shall have power to issue a

adjudging the relator guilty of contempt in declining to produce books and papers, were brought under section 32 of the charter of the city of Kingston, chapter 150 of the Laws of 1872. And the question submitted is, does this section of said chapter authorize the commitment of the relator for contempt in declining to produce books and papers?

It provides for two cases where a commitment may be made. First. Where one summoned shall refuse to attend. Relator did attend, and hence should not be imprisoned under that clause of the section.

summons to any person to appear and testify before them, in respect to any matter pending before or referred to them. Such summons may be served at any place within the county of Ulster, in the same manner as subpœnas for witnesses in criminal cases. Any person who shall refuse to attend in obedience to any such summons may be arrested by an order or attachment, which may be issued by the mayor or recorder, upon proof of the service of such summons and of such refusal, and be committed to the county jail or other proper place of detention until he shall appear or testify as required. Such witness so refusing to attend may also be fined or imprisoned for disobedience of such summons by the mayor or recorder, in the manner and to the same extent as witnesses refusing to attend in obedience to a subpœna duly issued by a justice of the peace. Whenever any person summoned as a witness before said common council, or any committee thereof, shall refuse to be sworn or affirmed, or to answer any proper or pertinent question, the mayor or recorder, on complaint made, may forthwith commit such person to the county jail or other proper place of detention for a period not exceeding twenty days, or until he shall be sworn or affirmed or answer such questions. Such commitment shall be made by a warrant directed to the sheriff of the county or other officer having such place of detention in charge, and shall recite the cause of such commitment, and such officer shall keep such person in close confinement as directed thereby."

It is claimed by the learned corporation counsel that although the city charter does not in express language confer upon the common council or its committee the right to compel the production of books and papers, still that that power is one incident to the power to compel the presence of and the giving of testimony by a witness, and if this contention be correct, were it not for the alleged defects above referred to, it would be evident that the relator was in contempt, and was properly committed to the county jail for refusal to obey the command of the summons issued by the committee appointed under the resolution of the common council.

If the proceeding were before a judicial instead of a legislative tribunal, there would be no question as to the correctness of this position, as courts of justice have for centuries had the inherent right to compel the attendance of witnesses and the production of such books and papers as were pertinent to the determination of the rights of parties in an action pending before them, and the Revised Law, the Revised Statutes and the provisions of the Code of Civil Procedure have in no sense conferred this power, but have simply defined, limited it and provided a method for its enforcement.

Second. Section 32 provides that one summoned, who refuses to be sworn, affirmed, or to answer any proper and pertinent question may be committed. The relator did not refuse to be sworn or to answer any proper or pertinent question. The above quoted clauses are the only ones relating to commitment for contempt.

The power to punish for contempt is derived from the statute, and cannot be extended beyond the limit imposed by the law. "No implication and no fancied necessity can be permitted to add to the literal meaning of the words by which the legislature have

There seems, however, from the earliest times to have been a wide distinction between the powers thus possessed by courts of justice and those conferred upon legislative bodies, and seems also to be a marked disposition upon the part of courts of justice to limit the scope of inquiry by legislative bodies, particularly those of a subordinate character, within the strict limit of the law authorizing such investigations. And the reasons assigned by the courts for the severity of their construction of such statute is that such investigations were unknown to the common law; are purely creatures of the legislative body itself; are informally conducted without the usual safeguards and restrictions imposed by rules of evidence and procedure in courts of justice; are apt to be inquisitorial and oppressive, and are too often used for strictly partisan purposes, becoming a menace to the rights of the citizen, without affording him that protection guaranteed by the Constitution and the laws. Interesting as the subject is, it is not possible within the limited time at the disposal of the court to review the authorities, ancient and modern, upon this important branch of the law. I can only refer to the statutes and to two or three of the more recent decisions.

It is admitted by the corporation counsel, and by counsel for the relator, that the language of the charter, "Such summons may be served at any place within the county of Ulster in the same manner as subpœnas for witnesses in criminal cases," means simply that such summons may be served without the payment to the witness summoned of the statutory *per diem* allowance, and the sum for mileage directed to be paid to witnesses in civil cases.

It is claimed, however, by counsel for the relator, that as the city charter does not in express terms provide for the issuing of a summons commanding the witness to produce books and papers, and does not in express language provide that if a witness fail to produce books or papers he may be committed to the county jail, that that power is not conferred by statute, and that as the provisions of the charter providing for the punishment of a recalcitrant witness is penal in its nature, it must be literally and strictly construed.

It will be seen by an examination of the statutes that in each case where the power to punish for contempt for a failure to comply with the provisions of a subpœna *duces tecum*, commanding the production of books and papers, is given, that the statute itself specifically and distinctly directs that a failure to produce such books and papers is a contempt. This distinct provision, it is admitted, is absent from the city charter. Whether it be a *casus omissus* or a deliberate withholding

restricted this power.  And this is especially true of all tribunals which are not courts of general jurisdiction." (*Rutherford* v. *Holmes*, 5 Hun, 317; 66 N. Y., 368.)

There seems to be an omission in the act under consideration to provide for a case where a witness declines to produce papers; and unless we attempt to disregard the doctrine laid down in the case of *Rutherford* v. *Holmes* (*supra*), that the power to commit for contempt cannot be extended in the least degree beyond the terms of the statute, we are compelled to adopt the view of the

---

of power by the legislature is, for the purpose of this inquiry, immaterial.  Thus, under the provisions of the Code of Civil Procedure and the Code of Criminal Procedure, express provision is made by statute for the production of books and papers, and for the punishment of a witness who fails to produce a book or paper when properly required so to do.  The penalty for disobedience in civil cases is prescribed by section 853 of the Code of Civil Procedure, which is as follows :

" A person so subpœnaed, who fails without reasonable excuse to obey the subpœna, or a person who fails without reasonable excuse to obey an order duly served upon him, made by the court or a judge, in an action before or after final judgment therein, requiring him to attend and be examined, or so to attend and bring with him a book or a paper, is liable in addition to punishment for contempt for the damages sustained by the party aggrieved in consequence of the failure and $50 in addition thereto."

The provisions of the Code of Criminal Procedure are embodied in section 613, and are to the effect that, if books, papers or documents be required, a direction to the following effect must be contained in the subpœna, etc.

In a leading case before the General Term of this department, Presiding Justice LEARNED writing the opinion, says: " The power which courts possess of punishment for contempts and for refusal to give evidence is, in its nature, an exception to the provisions of the Constitution.  It is a power to deprive a man of his liberty without a jury, and without a regular trial.  It cannot, therefore, be extended in the least degree beyond the limits which have been imposed by statute.  No implication and no fancied necessity can be permitted to add to the literal meaning of the words by which the legislature have restricted this power.  And this is especially true of all tribunals which are not courts of general jurisdiction. (*Rutherford* v. *Holmes*, 5 Hun, 317.)

This case, in which it was held that a justice of the peace had no power to adjudge a person in contempt and to punish him therefor, save in the exact cases prescribed by statute, and that a justice was liable in an action for false imprisonment at the suit of one imprisoned under and in pursuance of his warrant of commitment for such a contempt, was affirmed by the Court of Appeals in 66 New York (368), in which Judge FOLGER, delivering the opinion, says: " It is also significant that the legislature, so far as it has, in general terms, enacted for proceedings as for contempts to enforce civil remedies and to protect the rights of

**450** PEOPLE ex rel. WEBSTER v. VAN TASSEL.

THIRD DEPARTMENT, MAY TERM, 1892.

court below. The statute under which the recorder acted being silent as to any power on his part to commit for non-production of papers or books, in this regard is different from the Civil and Criminal Codes and Revised Statutes.

Under section 856 of the Code of Civil Procedure, power is conferred upon the court to commit a witness *when he refuses* "*to produce a book or paper which he was directed to bring by the terms of the subpœna.*" The Criminal Code (§ 613) provides for a subpœna *duces tecum*, and (§ 619) that for *disobedience to a subpœna* the

parties in civil actions, has confined its action to courts of record," and that no court not of general jurisdiction has any inherent or implied power to punish for contempt save in a case stated in the statute law.

In the case of *The People ex rel. Fries* v. *Riley, Sheriff of Kings County* (25 Hun, 587), Judge GILBERT says; "There exists no undefined power authorizing the commitment of citizens for contempt in cases defined and limited by statute."

This case, in which the relator was committed to the county jail of the county of Kings for refusal to pay a sum of money ordered to be paid by the City Court of the city of Brooklyn, and released on *habeas corpus* by a justice of the Supreme Court in the second district, was followed by the Court of Appeals in *Myers* v. *Becker* (95 N. Y., 493), and in *Sherwin* v. *People* (100 id., 358), and in numerous cases at the General Term since that time.

In the *Matter of Bradner* (87 N. Y., 171) it was unanimously held by the Court of Appeals that the board of supervisors of the county of Livingston had no jurisdiction to appoint a committee of its members for the purpose of an investigation relative to the railroad commissioners of one of the towns in that county, and that they had no authority to require the attendance of a witness before the committee upon such an investigation, and that, therefore, a subpœna requiring such attendance conveyed no mandate which imposed compliance, and disobedience thereto was not, within the meaning of the law, a contempt.

In that case the board of supervisors appointed a committee to make an investigation, and a subpœna signed by the chairman of the committee was issued, requiring the defendants to appear before the committee at a time and place named, and to bring certain documents in their control as might be required in the investigation of the subject.

The subpœna was not obeyed and the recalcitrant witness was committed to the custody of the sheriff of the county. He sued out a writ of *habeas corpus*, and on the return of the writ the judge ordered it to be vacated and quashed, and imposed as a condition that no action for false imprisonment on account of the imprisonment of the relator should be brought.

On appeal the General Term revised that part of the order imposing the condition, and on appeal to the Court of Appeals, that court unanimously held that the board of supervisors had no authority to compel the production of the books and papers; that no case of contempt was made out; that the warrant committing the relator to the custody of the sheriff was absolutely void and furnished no jurisdiction to the party causing it to be executed, who thereupon became liable to the

witness may be punished in the manner provided by the Civil Code. Under the Revised Statutes (2 R. S., 534, § 1), it was provided that the court could punish as for a contempt a person summoned as a witness for *refusing or neglecting to obey such summons.*

Section 32 of the charter of Kingston does not contain any general authority on the part of the recorder to commit for a refusal to obey the summons, but limits the right of commitment to certain acts of disobedience, viz. : The refusal to attend, and the refusal to be sworn or answer proper or pertinent questions.

defendants for false imprisonment; that that right of action which had accrued to the relator could not be interfered with by the court, and that it, therefore, had no authority for imposing such a condition.

In the case of *The People, on the Relation of Sabold* v. *Webb, Sergeant-at-Arms of the Assembly* (23 N. Y. St. Rep., 325), a committee of five members of the assembly, including the speaker, were given charge of certain repairs and alterations in the Capitol, the same to be completed by December 15, 1888. Subsequently, and after the organization of the legislature of 1889, a committee of members were appointed to investigate all the questions connected with the work, with power to send for all persons and papers, and report to the house, with such recommendations as in its judgment the public interest might require and for the purpose of remedial legislation. The committee issued its subpœna directed to the relator, the superintendent of the Western Union Telegraph Company of Albany, commanding that he bring with him certain telegrams addressed to one Snaith, to whom the contract had been awarded. Upon the relator's refusal to produce the telegrams or to give information thereof he was arrested on the warrant of the speaker, and subsequently committed to the common jail. He sued out a writ of *habeas corpus*, which came up before Mr. Justice MAYHAM, who, in a learned and exhaustive opinion, says:

"It seems well settled that the legislature cannot, nor can any committee appointed by it, constitute itself into a court of general jurisdiction, or a grand inquest for the purpose of inquiring into the conduct of a citizen not a member of its body. Nor can it compel the answer of the witness on an inquiry or an investigation before it, except for legislative purposes, or requiring information upon which to predicate remedial legislation. * * *

"Assuming, therefore, as we must under the authorities, that the legislature has no general judicial powers, and that it can confer none upon its committees, and that its power to punish contumacious witnesses is confined strictly to examination for legislative purposes, we are forced to the consideration of the question, was the investigation in which the special committee of the house engaged when the relator refused to answer and produce papers for legislative purposes or to promote beneficial legislation, or was it inquisitorial in the nature of a judicial investigation? * * *

I, therefore, conclude that there is an omission in the statute to confer power upon the recorder to commit for failure to produce papers and books, a defect that cannot be remedied by courts, and that hence the conclusion reached by the county judge was correct.

This view of the case renders it unnecessary to consider the other questions raised as to the order made by the recorder.

The order of the court below should be affirmed, with costs.

MAYHAM, P. J., concurred; HERRICK, J., concurred in the result.

Order affirmed, with costs.

