HYMAN GOLDMAN PLUMBING AND HEATING CORPORATION, Plaintiff, *v.* CARL G. NESBIT and Another, Defendants.

In the Matter of the Proceedings to Have DAVID J. ROSEN, Appellant, Punished as and for a Criminal Contempt of Court.*

First Department, May 3, 1935.

---

* Affg. 151 Misc. 246.

*David J. Rosen* [*Robert H. Elder* with him on the brief], appellant, in person.

*Robert P. Beyer, Assistant Attorney-General*, of counsel [*John J. Bennett, Jr., Attorney-General*], for the respondent, Municipal Court, City of New York, Borough of Manhattan, Third District.

MERRELL, J. An action was brought by Hyman Goldman Plumbing and Heating Corporation as plaintiff, against one Nesbit and the defendant, appellant, Rosen, in Municipal Court of the City of New York, resulting in a judgment against said defendants and in favor of the plaintiff for $750 and interest. Subsequently judgment was entered against defendants for $862.22, in accordance with a decision of Hon. THOMAS E. MURRAY, a justice of the Municipal Court, before whom the issues in the action were tried without a jury. The defendant, appellant, herein moved to vacate and set aside the judgment on the ground that the judge who presided at the trial was actuated by improper and dishonest motives. In support of the motion of the defendant, appellant, to vacate and set aside the judgment, the defendant, appellant, filed with the Municipal Court his affidavit, verified March 7, 1933. Said affidavit was replete with contemptuous statements attacking the probity and honesty of the judge before whom the action resulting in the judgment against the two defendants was tried. In his affidavit in support of his motion the defendant, appellant, stated that, before the action came to trial, the president of the plaintiff told the defendant, appellant, that he stood very well with ex-Sheriff Culkin, and that he could get the latter to use his influence in the interest of the plaintiff; that, since the case was tried and before the decision and since the decision, the said president of the plaintiff stated to a

number of people that ex-Sheriff Culkin fixed it up for him; that he sent a letter to the judge, and that the decision would be for plaintiff. In his affidavit the appellant further states that he is mindful that matters of that sort cast an aspersion on the court and its decision and judgment, and that even if it were not true that ex-Sheriff Culkin had exercised any influence with the court, enough of an aspersion had been cast upon the judgment that the same should be set aside and the case retried. The defendant, appellant, further stated in said affidavit that the president of the plaintiff knew ex-Sheriff Culkin, and that the plaintiff had done work for the ex-sheriff, and that plaintiff's president told defendant, appellant, that he was going to get the ex-sheriff to fix the case for him; that a number of other incidents led deponent to believe that a letter was actually sent by ex-Sheriff Culkin to the judge; that there were incidents in the chain of circumstances lending a suspicion and " adding foundation to the belief that improper influence was exerted upon the court in securing the judgment in favor of the plaintiff." Throughout the said affidavit the appellant accuses Judge MURRAY, who presided at the trial, with favoritism for plaintiff, and that circumstances indicated that the case was fixed up for plaintiff. The appellant further stated in his affidavit: " The general demeanor of the Trial judge was such that nothing that the defendants said mattered." The affidavit thus submitted on the application of the defendant, appellant, to set the judgment aside and for a new trial was replete with insolent and contemptuous accusations about the judge presiding at the trial. After the affidavit was filed, on the motion of the appellant to vacate the judgment and to order a new trial, the court summoned the defendant, appellant, to show cause why he should not be deemed in contempt of court. The proceeding was heard before Justice MURRAY in Municipal Court, and defendant was adjudged guilty of criminal contempt, and a jail sentence of thirty days and a fine of $250 were imposed. The order holding the defendant in contempt of court was unanimously affirmed by the Appellate Term. Leave to appeal from the determination of the Appellate Term to this court was thereafter granted.

The defendant, appellant, seeks to escape punishment for his contemptuous conduct committed in the presence of the court upon various technical grounds. In the contempt proceeding the defendant, appellant, objected to Judge MURRAY, against whom the contemptuous statements in his affidavit were directed, presiding at his trial for contempt. Objections were also raised that the order to show cause was not made returnable at a term of the Municipal Court, and that Judge MURRAY was not appointed to hold the term of Municipal Court at which the defendant was found guilty of

contempt. We think there is actually no merit whatever in the technical objections urged by the defendant, appellant. It is true that the order to show cause why the defendant should not be punished for contempt, granted by Justice MURRAY, was made returnable " before me," but it was, nevertheless, made returnable " in the Municipal Court of the City of New York, Borough of Manhattan, Third District, Part I thereof," as stated in the order to show cause. As to the objections of the defendant to being tried by a presiding judge against whom the defendant's contemptuous statements were directed, they constituted no disqualification on the part of the justice presiding. The contempt proceedings were properly tried before the justice who had been assailed. The technical objection is urged by the appellant that Justice MURRAY was assigned to a different part of the Municipal Court from that at which he was tried. We know of no reason why a judge of the Municipal Court may not hold court outside his regular assignments. Had the contempt proceedings against the defendant, appellant, been presented to any other Municipal Court judge, the same would have promptly been sent to Justice MURRAY's part for trial.

We have presented, upon this appeal, most contemptuous statements of a party to litigation, attacking the honesty and judicial character of a justice presiding at a trial who rendered a decision adverse to the claims of the defendant, appellant. Justice MURRAY, now deceased, through a long judicial career, was a judge of recognized ability and unimpeachable character. Without the slightest justification in fact the defendant, appellant, stung by an adverse decision, saw fit to visit upon a judge of the highest character, accusations of dishonorable and unjudicial conduct and of being actuated by favoritism and improper considerations. The contemptuous attack of the defendant, appellant, certainly interfered with the administration of justice and tended to bring contempt upon the court. It is just such conduct of the defendant as tends to bring contempt upon our courts. The defendant may not escape his just deserts by urging technical objections to a procedure resulting in the order against him. No court to which the facts were presented could have found otherwise than that the defendant, appellant, was guilty of criminal contempt.

The very grounds upon which the appellant asks a reversal of the order appealed from were before this court on a prior appeal by the appellant, Rosen, from an order denying his motion for a prohibition order against Justice MURRAY of the Municipal Court. (*Matter of Rosen*, 240 App. Div. 955.) Among other grounds on the application for a prohibition order, the appellant, Rosen, set forth the same grounds upon which he now asks a reversal of the order appealed

from, namely, that the contempt proceedings instituted by Justice MURRAY were unlawful, and that the judge was without jurisdiction to institute said proceedings for the reason that no summary action was taken by Justice MURRAY upon the commission of the contempt, and, further, that the order to show cause instituting the contempt proceedings was not in conformity with the provisions of section 755 of the Judiciary Law governing summary punishment for contempt of court, and that the order to show cause was not predicated upon an accusation supported by an affidavit in conformity with the provisions of section 757 of the Judiciary Law, and that the order to show cause, being a judge's order returnable before Justice MURRAY, was not authorized in a proceeding to punish for contempt of court. The order to show cause, assailed by the appellant in the prohibition proceedings, was the same as that which he now attacks by this appeal. In the application for a prohibition order the appellant urged that the order to show cause was a judge's order, and, having been made returnable before himself, the proceeding was " arbitrary, without warrant in law and without jurisdiction." In a supplemental affidavit in support of his application for the prohibition order, the appellant, by way of argument, stated: " As a further objection to the jurisdiction of Judge MURRAY to proceed against the deponent to punish him for criminal contempt, it is submitted that Judge MURRAY is without jurisdiction to hold Court in Part II of the Municipal Court of the City of New York, Borough of Manhattan, Third District, on the 23rd day of June, 1933, by reason of the fact that he does not hold a legal assignment to hold Court in said District and in said Part. Judge MURRAY is under an assignment to sit in Central Jury Court, Part XIII, from June 5th to July 1st, 1933, where he is authorized to try jury causes."

Upon the appeal from the order denying his motion for a prohibition order and to prohibit Justice MURRAY from proceeding to punish him for alleged criminal contempt of court, the appellant contended:

1. That Judge MURRAY is without jurisdiction to inquire as to the alleged misconduct under the order to show cause by which it was initiated, because

(a) Such a proceeding can only be initiated by a court order as distinguished from a judge's order.

(b) Only a court has a right to punish for criminal contempt of court acts defined by statute (Judiciary Law, § 750) as constituting criminal contempt.

4. Judge MURRAY is disqualified to conduct the hearing in contempt proceedings against the accused by reason of bias, prejudice, hatred as well as personal interest.

5. Prohibition will lie to enjoin a court or other tribunal from proceeding without jurisdiction or in excess of jurisdiction.

This court, upon appeal, unanimously affirmed the order denying the appellant's motion for a writ of prohibition (240 App. Div. 955), and thereby definitely disposed of the very question now raised as to Judge MURRAY's right and jurisdiction in the matter. Certainly, the appellant properly raised the question of Judge MURRAY's jurisdiction by the motion for a prohibition order. The contentions of the appellant were denied at Special Term, and the denial thereof was unanimously affirmed by this court. It, therefore, appears that all the questions presented by the appellant herein have been decided adversely to him by a unanimous appellate court. The appellant is, therefore, estopped from again raising the same questions, by reason of such prior adjudication.

The determination of the Appellate Term, affirming the order adjudging the defendant in contempt, should be affirmed, with twenty dollars costs and disbursements against the defendant, appellant, and the defendant, appellant, should serve the jail term and pay the fine imposed by the order.

MARTIN, P. J., and TOWNLEY, J., concur; O'MALLEY and UNTERMYER, JJ., dissent and vote for reversal.

UNTERMYER, J. (dissenting). I dissent and vote to reverse the determination of the Appellate Term upon the ground that, regardless of other questions, the proceedings which resulted in the order appealed from were conducted in violation of section 757 of the Judiciary Law and provisions of the Municipal Court Code. Section 750 of the Judiciary Law provides that " a court of record " has power to punish for a criminal contempt a person guilty of the acts therein specified. This is amplified by section 755, which provides for summary punishment by " the court, judge, or referee " where the offense is committed in the immediate view and presence of the court, judge or referee upon a trial or hearing. By section 757 of the Judiciary Law it is provided further that " where the order to show cause, or the warrant, is returnable before the court," " it *must* be made returnable at a term of the court, at which a contested motion may be heard." (*American Agricultural Chemical Co.* v. *Brooks*, 167 App. Div. 936; *Downey* v. *Fenn*, 124 N. Y. Supp. 876; *People ex rel. Geery* v. *Brennan*, 45 Barb. 344, 347.) The distinction both in procedure and in the consequences was fully considered in *Matter of Hanbury* (160 App. Div. 662), where, even though the nature of the contempt was such that it could have been punished summarily (Judiciary Law, § 755), the proceeding was instituted by warrant of attachment. That decision was approved and fol-

lowed in *Eastern C. S. Co.* v. *B. & M. P. I. U., Local No. 45* (200 App. Div. 714). Indeed, it is only in consequence of that distinction that we may entertain this appeal at all.

The order directing the appellant to show cause why he should not be punished for contempt is dated June 14, 1933. It is made by Hon. THOMAS E. MURRAY, a justice of the Municipal Court, and the judge against whom the contempt is alleged to have been committed. It directs the appellant " to show cause *before me* in the Municipal Court of the City of New York, Borough of Manhattan, Third District, *Part I thereof*," why he should not be punished for contempt. The order which finds the appellant guilty of a criminal contempt and directs that he be committed is a court order made " At a Term of the Municipal Court of the City of New York, held in and for the Borough of Manhattan, Third District," held by Hon. THOMAS E. MURRAY, Justice, although no particular part of that court is specified. It recites that by the order of June 14, 1933, the appellant was directed " to show cause *before the Municipal Court* of the City of New York " why he should not be punished for contempt of court. From this it is evident that the appellant was tried before the court and not before a judge thereof. (Cf. *Matter of Rudd* v. *Hazard*, 266 N. Y. 302.) Indeed the first and the last of the charges on which the appellant was found guilty of a criminal contempt were of such a character that they could only have been tried before the court. (*People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290; Judiciary Law, §§ 750, 755.)

Under these circumstances the appellant was entitled to insist that the matter be decided in the same way as any other contested motion. He duly objected to the power of the justice who presided at the trial to entertain the proceedings upon the ground that his assignment at that time was to Part 13 of the Central Jury Part and not to any part of the Third District Municipal Court, where these proceedings were conducted. That fact was not only undisputed at the hearing but is established by the official assignments of the president justice of the Municipal Court, of which we cannot fail to take judicial notice, which show that for the month of January, 1934, there were established three parts of the Third District Municipal Court and that Justice LAZARUS was assigned to Part I, Justice ABRAMS to Part II and Justice SHALLECK to Part III. Section 7 (subdivisions 3 and 6) of the Municipal Court Code provides that the president justice, on or before December first in each year, shall establish for the ensuing year parts for the court and designate what part or parts shall be held in each district and assign justices to hold court in any district and in any part in any district. Section 10 of the Municipal Court Code expressly pro-

vides: "Justices assigned by the president justice shall hold court in one or more parts as established and on such days as may be fixed by said president justice."

Rule 2 of the Rules of the Municipal Court (effective March 30, 1933), enacted pursuant to section 8 of the Municipal Court Code, provides: "In a district where more than one Part has been established motions shall be returnable in Part 2 and disposed of by the justice there presiding. If for any reason Part 2 is not in session, or in a district where there is but one Part, the justice presiding in Part 1 shall make disposition of the motion calendar."

The procedure which was followed, it seems to me, was in plain violation of those statutory provisions and of section 757 of the Judiciary Law, the very purpose of which was to require contempt proceedings to be heard in the same way as any other contested motion where the proceedings are not summary but are initiated by order to show cause or by warrant of attachment returnable before the court as distinguished from the judge. (Compare *Cooke* v. *United States*, 267 U. S. 517.) By the order to show cause of June 14, 1933, the appellant was directed to appear, not before any justice who might be assigned to hold any part of the Third District Municipal Court, but " before *me* [THOMAS E. MURRAY] *in* the Municipal Court of the City of New York, Borough of Manhattan, Third District, *Part 1 thereof*." When, pursuant to that order, he appeared, he was tried before a judge who had not been assigned to hold any part of the Third District Municipal Court. What had happened, of course, was that Justice MURRAY, though assigned to the Central Jury Part, had, notwithstanding the statutes to which reference has been made, undertaken to assume control of these proceedings even though other justices had been regularly assigned to hold all the parts of the Third District Municipal Court and had occupied a court room in the Third District courthouse, to no part of which had he been assigned. This, quite obviously, is the reason the order appealed from does not disclose at which part of the Third District Court the proceedings were held. If it did, it would at once be revealed that another justice had been regularly assigned to that part, or that the proceedings were conducted at a part of the court never established in accordance with section 7 of the Municipal Court Code. If this procedure is to be tolerated, it is not difficult to imagine the confusion and the conflict that will result in the transaction of the business of the courts. Justices assigned to a Trial Term of the court may then, against the opposition of a litigant, hear and decide a matter returnable at a Special Term to which another justice has been assigned. In my opinion the statutes to which reference has been

made expressly forbid what has been attempted here. A litigant is entitled to insist as a matter of right that a proceeding shall be heard by the justice who has been assigned to that part of the court where it is returnable or by another justice to whom it has been properly referred by him. Even conceding that Justice MURRAY, as a justice of the Municipal Court, had jurisdiction to hear this proceeding (*Matter of Rosen*, 240 App. Div. 955), his action constituted such a serious irregularity and such a violation of statute as to require the reversal of the order and that the proceeding be remitted to the Municipal Court to be heard by the justice duly assigned to hold that part of the court at which the order to show cause is returnable.

Here there were special reasons, not usually existing, for proceeding on the order to show cause in the same manner as in the case of any other contested motion. Indeed, considerations of propriety alone should have induced the judge, who was the victim of a personal attack on his integrity, to refuse, rather than to seek, jurisdiction. We are concerned here with a situation where the conduct of the appellant was not disorderly and where the allegations of his affidavit, however warranted they may seem, were material on the motion for a new trial — so material that, if they were true, the motion could not have been denied. If they were true, then it seems obvious that the affiant would not have been guilty of contempt of court in making a motion which he had the right to make upon allegations of fact material to the issue presented for decision. The only possible theory on which he could be found guilty of contempt was that his allegations were intentionally false.

Under these conditions, was the judge, who had been the subject of this violent attack, the proper person to decide, without preconception or personal interest, whether the attack was justified and, if not, what the measure of punishment should be? To me it seems evident that a litigant demanding a new trial on such grounds ought not to be confronted with the danger of contempt proceedings prosecuted before the very judge against whom the accusations of misconduct have been made upon the theory that the accusations are not true. Otherwise motions for a new trial upon these grounds will be rare indeed no matter how justified they might be. It is hardly to be expected that one whose integrity has been assailed will, by acquitting the assailant, concede that the assault was justified. In saying this, I do not for an instant suggest that the allegations of the appellant's affidavit in support of which no proof was offered by him, were in fact true. But it is only proper to add that the appellant, charged with contempt in making such allegations,

was justified in believing that any attempt to vindicate himself by establishing their truthfulness to the satisfaction of the judge who was assailed, would be useless and would merely result in the infliction of heavier punishment. Consequently, even if the matter had regularly come before Justice MURRAY for decision, he should have referred it to another judge in accordance with the principle so accurately stated by Chief Justice TAFT in *Cooke* v. *United States* (*supra*, at p. 539). In a matter so important in the administration of justice, the rights of litigants ought not to be subordinated to the sensibilities of the judge.

Indeed, we would be justified in holding that the disqualification of Judge MURRAY to sit in these proceedings was absolute under the decision in *Wilcox* v. *Royal Arcanum* (210 N. Y. 370). There it was decided that the members of the committee of a fraternal association were disqualified by a direct interest in the subject-matter of the controversy to act as judges in the trial of a member charged with making statements that members of the committee were guilty of graft and dishonesty. The disqualification of such a member was held to be analogous to that of a judge and consequently that the same statutory disqualification (Judiciary Law, § 15) applied to both. Since the truth of the accusations would have constituted a defense, the committee was held to be disqualified to try the charges to the same extent as would a judge. I quote at length from the opinion of the court, which seems to me fully to cover this aspect of the present case.

" The rule that no man should be a judge in his own cause is so founded on common right and reason that both Lord COKE and Chief Justice HOLT asserted the power to declare acts of Parliament repugnant to it void. [*Bonham's Case*, 4 Coke, part 8, pp. 355, 382; *City of London* v. *Wood*, 12 Modern, 669, 688.] The important question in this case is, what interest will disqualify."

Continuing, the court said: " The general charge was of improper conduct, violative of his duties or of his obligation and unbecoming his profession as a member of the order. Undoubtedly it would injure the order temporarily at least, to accuse its officers of being ' grafters,' but if the charge were well founded an impartial judge might conclude that it was made in the discharge of the highest duty to the order, and that the temporary injury resulting from the expose of wrongdoing was more than offset by the permanent good. It is no longer the law that the greater the truth the greater the libel. At any rate one of the issues presented by the pleadings was the truth of the defamatory charges against the members of the supreme council, and of course the question of jurisdiction must be determined by the issues framed for trial, not by the evidence

produced on the trial. It would seem plain that the trial committee had a direct interest in the determination of the question whether they themselves were grafters, unless the law places property above reputation. *It is as though a judge defamed were to try the defamer for a criminal libel.* While there is authority to support the view that he would not be disqualified in such a case (*State* v. *Sutton,* 74 Vt. 12; *Clyma* v. *Kennedy,* 64 Conn. 310), those cases appear to us to have been decided upon a too technical and narrow view of a rule, adopted by the common consent of mankind to insure impartiality and fair play. * * * It is shocking to one's sense of fair play that persons defamed should be selected to try the defamatory charge, and it is sufficient for the purposes of this case to hold that they are disqualified by a direct interest in the subject-matter of the controversy." (Italics mine.)

In the prevailing opinion it is said that these considerations are technical. I do not so regard them. On the contrary, I regard them as fundamental. But if they were technical it would furnish no answer to the objection that the action of the judge in hearing and deciding the contempt proceedings was an abuse of power exercised in violation of the statutes to which I have referred and to which no reference is made in the prevailing opinion of the court. In this State the Legislature has carefully limited the power to punish for contempt by statutory requirements, all of which must be observed before the power can be validly exercised. As to this, the court, in *Rutherford* v. *Holmes* (5 Hun, 317; affd., 66 N. Y. 368), said: " The power which courts possess of punishing for contempts, and for refusal to give evidence, is, in its nature, an exception to the provisions of the Constitution. It is a power to deprive a man of his liberty, without a jury and without a regular trial. It cannot therefore be extended, in the least degree, beyond the limits which have been imposed by statute. No implication, and no fancied necessity, can be permitted to add to the literal meaning of the words by which the Legislature have restricted this power."

The determination of the Appellate Term should be reversed and the proceeding remitted to the Municipal Court to be held by the justice duly assigned to hold that part of the court at which the order to show cause is returnable.

O'MALLEY, J., concurs.

Determination affirmed, with twenty dollars costs and disbursements.