Alexander Del Gtiorno, J.
This is a claim for false imprisonment in Rockland State Hospital from the 31st day of December, 1953 to and including the 16th day of February, 1954.
In October, 1948, claimant, who resides in Pomona, New York, bought a house and lot nearby at a tax lien sale, with money sent to her by her son, then a United States Marine serving in the Pacific, title being taken in her son’s name. The former owner of this property had died intestate. She was informed later by a firm of attorneys that it was their intention to redeem the property on behalf of the heirs of the original owner. No legal proceedings were taken to determine the ownership of the property. During the next five years, she spent considerable time and money in the repair, maintenance and improvement of this property. In 1949, she took out fire insurance on the house and paid the taxes on the property through October, 1953.
Claimant, noticing that there was some old lumber on the property, obtained the necessary permit from the Conservation Department and proceeded to burn it; on December 31,1953.
She testified that after the fire had been burning for about five minutes, a local policeman, Nolan, came upon the scene and told her that the property was not hers. When she protested that the property was actually hers, he pulled her to his police car, took her to a Justice of the Peace at Haverstraw, then to New York City to the District Attorney’s office and then back to Haverstraw. There, in a fire house, was a Dr. Sullivan, who, *319 she said, asked her only her name and occupation. Then, after being informed that she was going to a Veterans’ Hospital, she was taken to Rockland State Hospital by Patrolmen Nolan and Oldfield and by a police matron, Arvilla Ryan, her request to call her husband being refused.
Dr. Sullivan, Health Officer of the Town and Village of Haverstraw, filled out and signed Form 818-D.M.H., which is a “ Form of Application for the Admission to a State Hospital or Licensed Institution of a Mentally 111 Person Under the Provisions of Section 72 of the Mental Hygiene Law”. The first part of this form contains a history obtained by the health officer and the second part refers to the examination made by the health officer. In the second part, Dr. Sullivan certified that on the 31st day of December, 1953, he examined claimant, that in his opinion she was mentally ill and not suffering from drug addiction or drunkenness and that she was in need of immediate care and treatment in an institution for the treatment of mental illness for the reason “ unable to take care of her here ”. He certified that it was impracticable to obtain a medical certificate by certified examiners and a petition for her certification before admission for the reason that there was “ no time ”. On line 88 of the form, in response to question on lines 86 and 87 as to what characterized the present attack, was the answer “ arson — excitement — is tractive on line 90, answering as to what was first noticed is the statement “ arson ”. On the authority of this form signed by Dr. Sullivan, claimant was admitted to Rockland State Hospital.
The methods by which confinement in a mental hospital may be accomplished are set forth in sections 70-75 of the Mental Hygiene Law. Section 70 provides that one of the methods is on certificate of a health officer, as set forth in detail in section 72. Subdivision 3 of section 70 provides: “ Certificates, as required by sections seventy-two, seventy-three, seventy-four or seventy-five, must show that the person is mentally ill. * * * All certificates shall contain the facts and circumstances upon which the judgment of the physicians is based and shall show that the condition of the person examined is such as to require care and treatment in an institution for the mentally ill.”
Section 72 as it then existed (L. 1949, oh. 731) provided as follows:
“ § 72. Admission on certificate of a county commissioner of health, health officer or designee of either of them.
“ The director or physician in charge of any state hospital, except the Matteawan and Dannemora state hospitals, or of any *320 licensed private institution for the care and treatment of the mentally ill may, when requested by a county commissioner of health, a health officer or a certified examiner duly designated by either of them, receive and care for in such hospital or institution as a patient for a period not exceeding sixty days, from and inclusive of the date of the request, any person who, in the opinion of the county commissioner of health, the health officer or the designee of either of them, is dangerous to himself or others and who needs immediate care and treatment because of mental derangement other than drug addiction or drunkenness. The number of such designees shall be approved by, and their names listed with the department of mental hygiene.
“ Such request for admission of a patient based upon a personal examination shall be in writing and shall be filed at the hospital or institution at the time of his reception, together with a statement in a form prescribed by the commissioner giving' such information as he may deem appropriate. * * *
‘ ‘ Unless the patient shall sign a request to remain as a voluntary patient under the provisions of section seventy-one of this chapter, the county commissioner of health, the health officer or the designee of either of them making application shall cause such patient to be examined by one or two certified examiners, and if found mentally ill said patient shall be admitted under the provisions of sections seventy-three or seventy-four of this act, or, if found sane, the said patient shall be removed therefrom before the expiration of said period of sixty days.”
Dr. Stanley, the director of the hospital, testified that under section 72, the application for admission and the examination signed by Dr. Sullivan, are sufficient as executed for admission to the hospital, and that no other statement is necessary. He stated that the descriptive words employed by Dr. Sullivan might or might not indicate that the patient was mentally ill. He said further that if the hospital decides that the statement of the health officer is sufficient to admit the patient, then the hospital makes its own examination and its responsibility commences at that point. He described section 72 as being employed in emergency situations.
Dr. Charlotte Munn, a psychiatrist attached to the female section of the hospital at the time of the occurrence herein, and under whom several doctors served, testified that claimant was given an admission interview on December 31, 1953 by Dr. Barsa; that she was again examined on January 14, 1954, by Dr. Johnson, who gave a tentative diagnosis to the effect that *321 she was “without mental disorder, other types; emotional instability”. Dr. Munn examined claimant on February 1, 2, 3, 4 and 5 and other doctors examined her at various times. All of the doctors agreed that claimant was not and had not been psychotic and that she should be discharged. On February 17, 1954, within the 60-day period prescribed by section 72 of the Mental Hygiene Law, she was discharged in the custody of her husband.
Claimant contends that the health officer’s certificate was defective in that it did not state that in his opinion claimant was dangerous to herself and others and needed immediate care and treatment because of mental derangement, other than drug addiction or drunkenness, as required by section 72 of the Mental Hygiene Law.
The sole question involved herein is the validity of the certificate of the health officer. If the certificate was valid on its face, there can be no liability on the part of the State in the absence of negligence or fraud; if the certificate was defective on its face, the State is liable for damages to claimant.
One who arrests or restrains another may be liable for pursuing illegal or improper procedure as well as for acting upon an insufficient or improper basis. (Snead v. Bonnoil, 166 N. Y. 325, 328; MacDonnell v. McConville, 148 App. Div. 49, 53, affd. 210 N. Y. 529; Rutherford v. Holmes, 66 N. Y. 368, 372.)
Here, however, there was sufficient information in the certificate to justify hospitalization under section 72 of the Mental Hygiene Law. Based upon a personal examination of the claimant, it stated that the attack of claimant was characterized by arson, excitement, and that claimant was tractive. This was an indication that the claimant had committed an act of violence and was in an abnormal mental condition, which upon the examination then possible to make, indicated to him that she was then in need of immediate care and treatment. The question to be considered is whether claimant was shown to be so dangerous at the time of her admission that resort to the extraordinary measure of summary restraint was necessary for her own and the public’s safety. (Warner v. State of New York, 297 N. Y. 395.) The claimant, having been charged with arson on the certificate of the health officer, ostensibly had committed an act which forecast possible danger to herself and to others and which indicated a need for immediate care or treatment. The health officer stated further that in his opinion claimant was mentally ill and not suffering from drug addiction or drunkenness, that the local authorities were “ unable to take care of her here ’ ’ and that it was impracticable to obtain a *322 medical certificate by certified examiners and a petition for her certification before admission for the reason that there was “ no time Since arson was charged, and since the health officer stated that in his opinion claimant was mentally ill, section 72 of the Mental Hygiene Law, insofar as it states that the health officer must find the person dangerous to himself or others, has been complied with.
The court finds that the certificate of the health officer was valid on its face and that Rockland State Hospital acted properly in admitting the claimant to the hospital. (Warner v. State of New York, supra.) The evidence does not indicate facts upon which an inference of negligence may be predicated.
The court is not happy that it took 49 days to find out that the patient was not actually one who would be dangerous to herself or others. Condemnation of the apparently lackadaisical manner of completing the medical inquiry would be but a speculative gesture on the part of the court. What other remedies, if any, are available to her against those who took claimant into custody and certified her condition as herein indicated, is a question upon which another tribunal must pass.
The claim is dismissed.
This memorandum constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.