THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD C. STEARNS and Others, Respondents, v. WILLIAM MARR, as President of the IRON MOLDERS' UNION, No. 80, and Others, Appellants.

*Contempt — the power of the court to punish therefor does not depend on the statute alone — a person, not a party, not served with an injunction, may be punished for knowingly violating it.*

The power of a court of record to punish for contempt of its order is inherent and exists independent of statute. Such inherent power may be exercised by the court in addition to the power to punish for a contempt conferred upon it by statute.

A person, although not a party to an action in which an injunction has been granted and not served with such injunction, who, with knowledge of its provisions, willfully violates it, may be punished as for a contempt of court. The essence of the offense is the violation of the order with knowledge of its existence, and the manner in which knowledge of the injunction is obtained is not material.

HISCOCK, J., dissented on another ground.

APPEAL by the defendants, William Marr, as president of the Iron Molders' Union, No. 80, and others, from an order of the Supreme Court, made at the Onondaga Special Term and entered. in the office of the clerk of the county of Onondaga on the 27th day of July, 1903, enjoining and restraining the defendants from assaulting, menacing, threatening and intimidating the workmen in plaintiff's employ; also an appeal by Kyran Powers and Otto Benz and the defendant John Lillis from an order entered in said clerk's office on the 13th day of July, 1903, appointing a referee to hear and report to the court as to alleged violations of the said injunction order, and also from an order entered in said clerk's office on the 27th day of July, 1903, confirming the report of the said referee and adjudging that said Kyran Powers and others were guilty of criminal contempt of court.

*James Devine,* for the appellant Iron Molders' Union.

*Dennis B. Keeler,* for the other appellants.

*Edgar F. Brown,* for the respondents.

On the 30th day of June, 1903, upon the application of the plaintiffs in an action and upon a contested motion, an injunction was issued herein, restraining the defendants, and "each of them, their agents, servants, representatives and coadjutors, and all persons connected with them, or either of them, * * * from assaulting, menacing, threatening or intimidating, whether by manner, attitude, speech, numbers, or other act or means, the men and workmen in plaintiffs' employ * * * and from interfering with said plaintiffs or said plaintiffs' business by any unlawful means for the purpose of preventing any person or persons who now are or may hereafter be in plaintiffs' employment from continuing therein, or who, being desirous of entering said employment, from doing so, or continuing therein."

On the seventh day of July, upon affidavits of various parties, an order, directed to the appellants and others herein, requiring them to show cause why they should not be punished for a criminal contempt for a violation of the injunction order theretofore issued in that, upon the third day of July, they had assaulted and intimidated the workmen of the plaintiffs, was granted herein.

Upon the return to the order an order of reference was made to take testimony upon the questions raised by the affidavits presented, and upon the coming in of the referee's report certain of the appellants were adjudged guilty of a criminal contempt and punishment therefor was imposed.

The three appeals from the injunction order, the order of reference and the order adjudging the persons in contempt are presented together.

STOVER, J. :

We think the evidence justified the granting of the injunction order by the court in the exercise of its discretion. The order of reference was proper in order to inform the court as to the facts, and the evidence taken upon the reference warranted the finding that the defendants and others connected with them had, with knowledge of the injunction, willfully violated its provisions.

Two of the appellants were not parties to the action and were not served with the injunction, and it is contended that as to these persons the court was without power to punish for contempt.

It has been frequently adjudicated that at common law all courts of record have inherent power to punish contempts. This power is recognized to be inherent in the court by reason of its necessity for the enforcement of the powers of the court, the maintenance of its authority and the conduct of its proceedings. While power to punish contempts may be conferred by statute and statutes may, within certain limits, declare acts to be such as may be punishable as contempts, yet the courts may exercise that power beyond and above the statute and may assert their constitutional powers by treating as contempts acts which may invade and defy their authority or destroy the power and force of their decrees. Courts of record cannot be hampered or restrained in the enforcement of this inherent power.

As stated in *United States* v. *Hudson* (7 Cranch, 32) : "To fine for contempt, imprison for contumacy, enforce the observance of order etc., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others, and so far our courts no doubt possess powers not immediately derived from statute."

The same doctrine was recognized in *People* v. *Sturtevant* (9 N. Y. 263) and a line of decisions, among them that of *Daly* v. *Amberg* (126 N. Y. 490).

This power is perhaps more frequently .exercised by courts of equity than courts of common law, growing out of the necessity of a prompt enforcement of their decrees, that they may not be rendered ineffectual, either by non-compliance or active interference.

It will be observed that the contempt which is punishable as a criminal contempt, both as defined by statute (Code Civ. Proc. § 8) and as recognized by the adjudications, so far as it may apply to the case under discussion, is the violation of the injunction, with knowledge of its provisions; and this involves a willful violation of the order. The gravity of the offense is characterized, not by the manner in which the knowledge is acquired, but its essence is the violation of the order with knowledge, however that knowledge may have been obtained. If it may appear that a person has the knowledge and, with that knowledge, violates the provisions of the order, he may well be adjudicated in contempt. There is no good reason, either in law or sound intelligence, why any distinction should be made between knowledge of the provisions of an injunction by an actual service, and knowledge from some other source of information.

Some stress was laid, in the argument, upon the injustice of punishment for the violation of an order, the contents of which the individual was not familiar with; but there is no more good reason why actual service of the order should be made, in order to lay the foundation for a contempt proceeding, than to require the service of a statute making an act a crime, as preliminary to punishment of a person violating it. The offense is one *per se*, .not made so because the order was served, but the act itself is in willful contempt and violation of the decree or order of the court. The service of the order and regularity of procedure are quite independent of the act itself, and so, when called upon to determine whether a person is guilty of contempt, it is for the court to determine whether he has willfully, that is, with full knowledge of the circumstances, committed an act which, so far as it invades the authority of the court, constitutes a contempt. The service of the order is evidence of his knowledge, but it is not the only method of proof.

As was stated in *People* v. *Sturtevant* (*supra*): "In administering the law in respect to the violation of injunctions, the court of chancery never lost sight of the principle that it was the disobedience to the order of the court which constituted the contempt, and, therefore, although it required of the party availing himself of its order, a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of its orders to be wholly lost, when the party sought to be bound by the order had actual knowledge, or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him." (Citing *Hull* v. *Thomas*, 3 Edw. Ch. 236; *People* v. *Brower*, 4 Paige, 405; *M'Neil* v. *Garratt*, 1 Cr. & P. 98.)

It is true that, in many of the cases in which this doctrine has been cited with approval, the parties affected were parties to the action, but in other cases they were not parties to the record, but were acting either as agents, employees, or in some common purpose with the parties to the action.

It follows that such persons as participated in the illegal acts which were under consideration in this action, with knowledge that those acts were prohibited by the injunction order, might well be adjudged in contempt, and we think the record discloses ample evidence to warrant the finding of the court that these men were acting under the direction of the parties to the action, or some of them, and with full knowledge of the provisions of the injunction order. They are protected neither by the spirit nor the form of the law, and the Special Term, having held that the lawless acts were committed with full knowledge, and in willful disobedience of the order of the court, such finding ought not to be interfered with by us.

All concurred, except HISCOCK, J., who dissented from the order punishing the defendant Benz upon the ground that the evidence does not satisfactorily establish that he was guilty of contempt.

Order affirmed, with ten dollars costs and disbursements upon each appeal.