LILLIAN GABRELIAN, Respondent, v GABRIEL GABRELIAN, Appellant.

Second Department, May 20, 1985

**APPEARANCES OF COUNSEL**

*Gabriel Gabrelian,* appellant *pro se.*

**OPINION OF THE COURT**

BRACKEN, J.

While inherent power resides in the courts of record in this State to impose financial sanctions upon parties or their attorneys who engage in abusive litigation practices, based upon the circumstances of the case before us we conclude that Special Term's exercise of its inherent power constituted an improvident exercise of discretion and, therefore, the order, insofar as it imposed such a sanction, must be reversed.

For purposes of this appeal, the pertinent facts may be simply stated. Plaintiff wife was granted a judgment of divorce in 1975

on the ground of cruel and inhuman treatment by defendant. More than eight years after entry of that judgment, defendant moved *pro se* to punish plaintiff for contempt for having failed to abide by the provisions of the judgment directing the parties to equally divide their personal property after the sale of the marital residence. Special Term denied the motion and stated in its decision that there had been no showing of contumacious conduct on the part of plaintiff wife. Moreover, the court found that the very issues which defendant had attempted to raise in his *pro se* motion had been determined over one year earlier after a hearing before another Justice of the court, and two District Court actions by defendant seeking identical or related relief had also been dismissed. Special Term, noting that defendant had failed to appeal adverse determinations but, rather, had continued to make "harassing, vexatious motions" against his former wife, imposed a fine upon defendant in the sum of $500 payable to plaintiff within 10 days and further enjoined defendant from commencing any further proceedings against plaintiff until the fine and certain other previously awarded sums had been paid.

Our determination of the propriety of this fine begins with a brief review of the various sources of authority permitting a court to direct a party or its attorney to pay a sum of money.

Pursuant to CPLR articles 81 and 82 a court may, in its discretion, award costs in an action, on a motion or on an appeal. Costs generally are defined as financial allowances authorized by statute to reimburse the successful party for expenses incurred in litigation (*see generally,* 24 Carmody-Wait 2d, NY Prac § 148:2, at 519-520). However, the amount of costs which may be awarded are strictly limited by statute to fixed amounts bearing no relationship to the amount actually expended by the party in successfully asserting its rights in court. For example, in the instant case, involving a motion to punish for contempt, the Supreme Court, Suffolk County, could have awarded costs only in an amount not exceeding $20 (CPLR 8202), plus disbursements representing the reasonable and necessary expenses of the motion (CPLR 8301 [b]). Because the power to award costs is derived solely from statute (*see generally,* 24 Carmody-Wait 2d, NY Prac § 148:4, at 521-524), it is clear that the imposition of a $500 fine in this case by Special Term did not constitute an award of costs and disbursements within the meaning of the pertinent provisions of the CPLR.

A second source of authority for the imposition of financial sanctions is the contempt power. The power to punish for crimi-

nal contempt is strictly circumscribed and clearly would not apply to defendant's conduct in the within case (Judiciary Law § 750 [A]). The power to punish for civil contempt, however, is much broader and includes the power to punish a party for any "abuse of a mandate or proceeding of the court" (Judiciary Law § 753 [A] [2]). Where a party is adjudged to be in civil contempt, a fine sufficient to indemnify the aggrieved party for the loss or injury occasioned by the contempt may be imposed or, where such actual loss or injury is not shown, a fine not exceeding the amount of plaintiff's actual expenses, plus $250, may be imposed (Judiciary Law § 773). It is clear, however, that in this case the imposition of a $500 fine by Special Term was not made upon an adjudication of civil contempt in conformity with the statutory provisions pertaining thereto (Judiciary Law § 753 *et seq.*).

We further conclude that the fine imposed herein cannot be justified as a valid award of attorney's fees. It is generally recognized that counsel fees are merely incidents of litigation which are not compensable or recoverable in the absence of specific statutory authority or some contractual obligation (*City of Buffalo v Clement Co.,* 28 NY2d 241, 262-263; *Matter of Low,* 208 NY 25, 31; *Perez v One Clark St. Hous. Corp.,* 108 AD2d 844; *Klein v Sharp,* 41 AD2d 926). Under the Domestic Relations Law, counsel fees are recoverable in a contempt proceeding to enforce a provision of a divorce judgment requiring the payment of a sum of money (Domestic Relations Law §§ 238, 245). However, in the within matter defendant sought to punish plaintiff for her alleged failure to have distributed certain items of personal property and not for any failure to abide by a provision of the divorce judgment requiring payment of a sum of money. Thus, contempt did not lie as a proper enforcement remedy herein, and the statutory provision for awarding counsel fees was therefore inapplicable. There being no other statute colorably authorizing an award of counsel fees in this case, it is clear that the within fine did not constitute a valid award for such fees.

Under CPLR 5015 a court may grant relief from a judgment or order "upon such terms as may be just" (CPLR 5015 [a]). Also, under CPLR 2004, a court may extend the time fixed by statute for doing any action "upon such terms as may be just". Although these statutes do not expressly provide for the imposition of money sanctions, it is now well settled that such sanctions may be imposed, for example, as a condition for relieving a party of a default (CPLR 5015 [a] [1]; *Piazza v Hastings Assoc.,* 103 AD2d 738; *Mineroff v Macy's & Co.,* 97 AD2d 535; *Bissaccia v Aknin,*

54 AD2d 681; *Siegel v Tamarack Lodge Hotel,* 46 AD2d 684; *Schickler v Seifert,* 45 AD2d 816; *Moscatiello v Savarese,* 42 AD2d 519; *Moran v Rynar,* 39 AD2d 718; *Springer v Marangio,* 38 AD2d 852).

In addition, it is now well settled that monetary sanctions may be imposed pursuant to CPLR 3126 as a penalty for refusal to comply with an order of discovery or a refusal to disclose (*see, e.g., Renford v Lizardo,* 104 AD2d 717; *Thadford Realty Co. v L. V. Income Props. Corp.,* 102 AD2d 823; *Everin v Greyhound Elevator Corp.,* 97 AD2d 832; *Jordan v Huntington Hosp. Assn.,* 40 AD2d 870). Although this statute does not expressly provide for financial penalties, it does indicate that the list of specific sanctions contained therein (i.e., resolution of issues against the refusing party, preclusion, staying proceedings, striking pleadings, dismissing actions, and rendering default judgments) is not exclusive (*see generally,* 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3126.14; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:11, pp 653-654), and the court may make such orders "as are just" in further compliance (CPLR 3126).

However, none of the foregoing statutes constitute authority for the fine imposed by Special Term in this case. In fact, there appears to be no statute, short of contempt, which even colorably empowers a court to impose a financial assessment upon a party or its attorney for general abuse of the judicial process, such as repeated filings of frivolous motions. Nevertheless, we conclude that such power is derived from the so-called "inherent powers doctrine".

It is our view that courts of record (Judiciary Law § 2) are vested with inherent powers, which are neither derived from nor dependent upon express statutory authority, and which permit such courts to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction (*Langan v First Trust & Deposit Co.,* 270 App Div 700, *affd* 296 NY 1014).[1] The so-called "inherent powers doctrine" has been aptly described as follows: "Under the inherent powers doctrine a court has all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist

---

1. Historically, inherent powers have been said to reside only in courts of superior jurisdiction, and not in inferior courts, i.e., courts not of record (*Matter of Burge* [*Oceanic Trading Co.*], 203 Misc 677, *revd on other grounds* 282 App Div 219, *affd* 306 NY 811; *People ex rel. Walsh v Ashworth,* 185 Misc 391). The Supreme Court of this State is a court of record (Judiciary Law § 2 [5]).

because the court exists; the court *is,* therefore, it has the powers reasonably required to act as an efficient court. Inherent judicial powers derive not from legislative grant or specific constitutional provision, but from the fact it is a court which has been created, and to be a court requires certain incidental powers in the nature of things. (Carrigan, Inherent Powers of the Courts, National College of the State Judiciary, Reno, Nevada [1973].)" (*Matter of People v Little,* 89 Misc 2d 742, 745, *affd* 60 AD2d 797.) A court's inherent powers are derived from the very fact that the court has been created and charged with certain duties and responsibilities; they are those powers which a court may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its own independence and integrity; such powers have been recognized since the days of the Inns of Court in common-law English jurisprudence (*Eichelberger v Eichelberger,* 582 SW2d 395, 398-399 [Tex]; *see also, Jacobson v Avestruz,* 81 Wis 2d 240, 244-248, 260 NW2d 267, 269-270; 20 Am Jur 2d, Courts, §§ 78-79).

Despite the broad language employed in those cases to describe the "inherent powers doctrine", the doctrine has not been widely applied. It has, however, been utilized as a basis for calendar control, e.g., the dismissal of actions for nonprosecution and the granting of preferences. In *Plachte v Bancroft Inc.* (3 AD2d 437, 438), the Appellate Division, First Department, stated: "It is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them" (*see also, Travelers Ins. Co. v New York Yankees,* 102 AD2d 851, 852; *Judson v Three D Bldg. Corp.,* 18 AD2d 232, 234; *Taks v Stern,* 14 AD2d 585, 586; *cf. People v Douglass,* 60 NY2d 194). Similarly, in *Link v Wabash R. R. Co.* (370 US 626, 630), the United States Supreme Court held that dismissal of a case due to plaintiff's attorney's failure to appear at a pretrial conference constituted a valid exercise of inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs".

A closely related aspect of the inherent power is that which vests the court with the authority to assign individual cases or classes of cases to a particular justice or part thereof (*see, e.g., People v Granatelli,* 108 Misc 2d 1009, 1018; *Bankers Trust Co. v Braten,* 101 Misc 2d 227, 235-236).

Further, courts have the inherent power to formulate and promulgate rules of practice (*Hanna v Mitchell,* 202 App Div 504, *affd* 235 NY 534; *see generally,* Cratsley, Inherent Powers

of the Courts, National Judicial College [1980], at 37-39), including rules which authorize the imposition of sanctions for conduct by lawyers which falls short of contempt of court (*In re Sutter,* 543 F2d 1030, 1037-1038).

In addition, a court has the inherent power to take necessary steps to permit it to exercise its jurisdiction and to protect it from unreasonable restraint. For example, a court has the inherent power to make an ex parte order requiring the legislative branch of government to secure suitable facilities for the transaction of court business (*In re Courtroom & Off. of Fifth Branch Circuit Ct.,* 148 Wis 109, 134 NW 490), to order the legislative body empowered to approve fiscal appropriations to authorize payment for necessary supplies to conduct court business (*State ex rel. Kitzmeyer v Davis,* 26 Nev 373, 68 P 689), to order the county clerk to enter a judgment directing the county treasurer to pay a court stenographer for a transcript for an appeal in a criminal case (*Matter of People v Little,* 89 Misc 2d 742, *affd* 60 AD2d 797, *supra*), and to order the county sheriff to provide security services for courts sitting within the county (*Matter of Spike,* 99 Misc 2d 178; *see generally, Pena v District Ct.,* __ Col __, __, 681 P2d 953, 957; Cratsley, Inherent Powers of the Courts, National Judicial College [1980]).

The power to correct mistakes or errors in judicial records is also said to be among the powers that are inherently possessed by courts (*People v Minaya,* 54 NY2d 360, 364, *cert denied* 455 US 1024), as is the power to seal and expunge records (*Matter of Dorothy D.,* 49 NY2d 212, 215), the power to correct ambiguities in judgments (*People v Stoesser,* 92 AD2d 650, 651), and the power to vacate judgments, for sufficient reason, in the furtherance of justice (*Ladd v Stevenson,* 112 NY 325, 332; *cf. Matter of McKenna v County of Nassau,* 61 NY2d 739, 742).

Finally, although the contempt power has now been codified in this State (*see,* Judiciary Law art 19), it has long been recognized that courts have the inherent power to enforce respect for and compliance with their judgments and mandates by punishment for contempt, which power is not dependent upon any statute (*Roadway Express v Piper,* 447 US 752, 764-765; *Shillitani v United States,* 384 US 364, 370; *De Lancey v Piepgras,* 141 NY 88, 96; *People ex rel. Stearns v Marr,* 88 App Div 422, *mod on other grounds* 181 NY 463; *McKendry v McKendry,* 202 Misc 312, *revd on other grounds* 280 App Div 440). At English common law, courts were recognized to possess the inherent power to punish, by process of contempt, any disregard of judicial authority, both for the benefit of litigants, i.e., civil

contempt, and for the preservation of their own order and dignity, i.e., criminal contempt (*Matter of Douglas v Adel,* 269 NY 144, 146; *Matter of Barnes,* 204 NY 108, 113-114; *People ex rel. Platt v Rice,* 144 NY 249, 263; *People ex rel. Munsell v Court of Oyer & Terminer,* 101 NY 245, 249-250; *Continental Mtge. Guar. Co. v Whitecourt Constr. Corp.,* 164 Misc 56; *Silverman v Seneca Realty Co.,* 154 Misc 35). This power became a part of the State's common law and formed the source of the early State statutes pertaining to contempt (*Matter of Douglas v Adel, supra; Matter of Barnes, supra; People ex rel. Platt v Rice, supra*). Because the common-law contempt power vested the courts with unrestrained discretion, statutes were enacted to bring the power within definite and fixed rules (*People ex rel. Munsell v Court of Oyer & Terminer, supra*). These early statutes (*see,* 2 Rev Stat of NY, part III, ch VIII, tit XIII, § 1; ch III, tit II, art I, § 10 [1st ed]), and their present-day counterparts (*see,* Judiciary Law §§ 750, 753), recognized and perpetuated the distinction between the two classes of contempt, by preserving the common law with respect to private or civil contempts (*see,* Judiciary Law § 753 [A] [8]), while strictly limiting the scope of public or criminal contempts to those acts proscribed by statute (*see,* Judiciary Law § 750 [A]). Thus, a court seeking to punish for criminal contempt must look only to the statute, while a court invoking its power to punish for civil contempt may, if necessary, look beyond the specific provisions of the statute and resort to its inherent common-law contempt power (*People ex rel. Munsell v Court of Oyer & Terminer, supra; see also, People ex rel. Nunns v County Ct.,* 188 App Div 424; *People ex rel. Brewer v Platzek,* 133 App Div 25).

The foregoing examples are merely illustrative, and are not meant to define the exact perimeters of the power inherent in the courts of record of this State. Indeed, the inherent power, is, by its very nature, not susceptible to precise definition (*De Lancey v Piepgras,* 141 NY 88, 96, *supra*). Thus, we must now determine whether that power encompasses the authority, apart from the contempt power, to impose financial sanctions upon a party or its attorney for abusive litigation practices such as the repetitive filing of frivolous and vexatious motions by defendant in the within case. Those courts in the State which have considered this question have held that it does.

In *Gottlieb v Edelstein* (84 Misc 2d 1053), the court held that it had the inherent power to direct defendant's attorney to compensate plaintiff and her attorney for the time, money and effort expended by reason of his conduct: defense counsel had failed to advise the court and plaintiff that his client was deceased and

that no administrator had been appointed, thereby preventing the case from going to trial as scheduled. In *Kimple v Auble* (87 Misc 2d 997), the court suggested that it had inherent authority to impose an obligation upon an attorney to pay court costs where there had been some neglect or delinquency on his part in the performance of his duties to his client and to the court as an officer thereof. However, the court held that it could not do so where the attorney had not yet filed a notice of appearance in the action. In *Karutz v Chicago Tit. Ins. Co.* (112 Misc 2d 815), the Appellate Term of this department considered the issue of whether counsel could be assessed for unreasonable (e.g., frivolous and dilatory) conduct in discovery proceedings. The court found that there was no statutory authority for imposing monetary conditions upon a party seeking discovery who had failed to appear for a deposition (CPLR 3126 does not apply to the party *seeking* discovery). The court then went on to conclude that a financial sanction could be imposed under the inherent powers doctrine: "Although stated in a different context a long time ago, the following comments by the then Chief Judge RUGER in *Forstman v Schulting* (108 NY 110, 112) appear relevant: 'It has been the uniform practice of the courts to exercise summary jurisdiction over the conduct of parties and attorneys, in actions pending in court, and enforce obedience to orders and directions made by it, in the interest of fair dealing and honesty, to protect all parties or persons whose rights have been affected by the litigation.' We also agree with the observation of Judge DUGAN, of Yates County Court, that: 'Under the inherent powers doctrine a court has all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective' (*Matter of People v Little,* 89 Misc 2d 742, 745, affd 60 AD2d 797). It may well be that the time has come for courts, pursuant to their inherent powers (see, also, *Judson v Three D Bldg. Corp.,* 18 AD2d 232, 236; 20 Am Jur 2d, Courts, §§ 78, 79), to impose sanctions upon parties and/or their attorneys who frustrate the expeditious disposition of appropriate litigated matters by engaging in dilatory or frivolous conduct during the course of litigation calculated to impede the orderly administration of justice and cast an undue burden on the Judges and their supporting staff (see Freedman and Brown, The Frivolous Suit and Frivolous Defense, NYLJ, Dec. 4, 1979, p 1, col 2, for an extended discussion of the issues touched upon herein). The court should, therefore, have available to it options such as the terms sought by plaintiff herein to encourage due regard and concern for the sanctity of the judicial process (cf.

*Mills v Capello,* 6 AD2d 841)" (*Karutz v Chicago Tit. Ins. Co., supra,* at p 820).

Finally, in *Aslanis v Southwest Sewer Dist.* (92 AD2d 855), this court implicitly recognized the "inherent powers doctrine" as a source of authority for the imposition of financial sanctions upon attorneys under such circumstances. However, we held that the doctrine did not permit the imposition of a sanction payable to the court rather than to the adverse party.

The Federal courts have not always taken a consistent view on this question. Thus, in *Gamble v Pope & Talbot* (307 F2d 729, 731 [3d Cir], *cert denied sub nom. United States Dist. Ct. v Mahoney,* 371 US 888), it was determined that the District Court lacks any inherent power to impose financial penalties against an attorney who has not been held in contempt. In *Gamble,* the attorney was fined for failing to file a pretrial memorandum within the time provided in a standing order of that court. The Court of Appeals held that the imposition of a fine in the absence of authority and for conduct not found to be contemptuous violated the 5th Amendment.[2] After being soundly criticized and its reasoning questioned by both judicial authorities and commentators alike, *Gamble* has recently been overruled and the doctrine of inherent power upheld (*Eash v Riggins Trucking,* 757 F2d 557 [3d Cir, Mar. 15, 1985]). In *Flaksa v Little Riv. Mar. Constr. Co.* (389 F2d 885, 888 [5th Cir], *cert denied* 392 US 928), it was held that: "The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it". In addition, the Supreme Court of the United States has held that Federal courts have the inherent power to tax attorney's fees directly against counsel who have abused the processes of those courts, notwithstanding the general rule precluding recovery of counsel fees (*Roadway Express v Piper,* 447 US 752, 764-767). However, the court expressed concern about the due process implications arising from the imposition of such sanctions, and cautioned that they "should not be assessed lightly or without fair notice and an opportunity for a hearing" (*Roadway Express v Piper, supra,* at p 767; *see also, Eash v Riggins Trucking, supra,* at p 570).

The conclusion that we draw from the foregoing cases is that there is an inherent power vested in all courts of record in this

---

2. In his dissenting opinion, Chief Judge Biggs stated: "The power of a court to impose appropriate and reasonable sanctions upon those admitted to its bar is a familiar phenomenon and lies within the inherent power of any court of record" (*Gamble v Pope & Talbot,* 307 F2d 729, 735).

State (*see,* Judiciary Law § 2). That power includes, in general terms, the power to regulate and control the conduct of litigants and counsel appearing before such courts and, further, the specific power to impose financial sanctions upon a party or an attorney who has engaged in abusive litigation practices. The question of whether the inherent power is to be invoked in a particular case must be determined on an ad hoc basis; the court must determine, in its discretion, whether a monetary assessment would be just and fair, and whether its imposition would be consistent with sound policy considerations, e.g., promoting speedy, efficient and inexpensive resolution of lawsuits, on their merits, and deterring neglect, delay and intentional abuse such as the institution of successive, baseless and frivolous legal proceedings that serve no purpose other than harassment and that hinder the courts from acting upon more meritorious claims. Because inherent powers are not subject to direct democratic controls, they must be invoked with great restraint, as there is a danger that such powers may be wielded arbitrarily or in doubtful cases (*Roadway Express v Piper, supra,* at pp 764-765; *De Lancey v Piepgras,* 141 NY 88, 96, *supra*). Therefore, the court must first consider the availability of statutory remedies, including an award of costs and disbursements or attorney's fees pursuant to the statutes discussed herein (*supra*), the imposition of monetary sanctions pursuant to those sections of the CPLR authorizing such sanctions (*e.g.,* CPLR 2004, 3126, 5015), and the statutory contempt power (Judiciary Law art 19). In an appropriate case, the court may also exercise its equitable power to enjoin vexatious litigation (*Sassower v Signorelli,* 99 AD2d 358). Where a court does invoke its inherent power to assess a litigious party for pressing a frivolous claim, due process requires that it be done upon fair notice and a reasonable opportunity to be heard (*Roadway Express v Piper, supra,* 767; *see also, Financial Penalties Imposed Directly Against Attorneys in Litigation Without Resort to the Contempt Power,* 26 UCLA L Rev 855, 857-858). Finally, we hold that the court may, in its discretion, invoke its inherent power to require an abusive or neglectful litigant or attorney to pay a sum of money to the opposing party, when such party has suffered by reason of the abusive conduct; alternatively, the judge may direct that such payment be made directly to the court, when it appears that the efficient disposition of the business before it has been impaired by reason of the conduct in question (*see, e.g., Campbell v Regency Towers,* 76 Misc 2d 33). To the extent that our decision in *Aslanis v Southwest Sewer Dist.* (92 AD2d 855, *supra*) holds to the contrary, it is overruled.

We fully recognize the concerns voiced by our concurring colleague. However, the apocalyptic consequences envisioned in the concurring opinion appear overdrawn. The reasonable exercise of the inherent power of the judiciary to preserve and further the integrity and effectiveness of the judicial system, under appropriate self-imposed constraints and subject to appellate review, will in no way impede or diminish ready access of legitimate causes to the judicial system. In fact it should have the contrary effect, particularly in the face of the ever-increasing tide of truly vexatious and frivolous litigation.

Applying the aforementioned principles to the case at hand, we conclude that the imposition of a $500 fine constituted an improvident exercise of discretion vested in Special Term under the "inherent power doctrine". Although defendant had clearly engaged in an abuse of the judicial process, he had not violated any statute or rule, nor any order or direction of the court. Moreover, defendant was a *pro se* litigant and, therefore, his actions should not have been measured against the rules of conduct for attorneys proscribing the commencement and maintenance of frivolous or vexatious litigation (Code of Professional Responsibility, DR 7-102 [A] [1], [2]). Thus, we conclude that Special Term's injunction, which prohibited defendant from commencing further proceedings against plaintiff until the fine and all other legal fees previously awarded to plaintiff had been paid, constituted, aside from the imposition of the fine, an appropriate and sufficient judicial response under the circumstances. Because we are reversing so much of the order as imposed the fine, defendant will be enjoined from instituting further litigation against plaintiff only until such time as all other legal fees previously awarded to her have been paid. Of course, should defendant bring additional proceedings while the order enjoining him from doing so remains in effect, Special Term could then consider additional remedies, including the contempt power or, in the sound exercise of its discretion, the inherent power to impose monetary sanctions.

LAZER, J. P. (concurring in the result). I agree that there should be a reversal, but I cannot agree that the judicial system possesses some amorphous inherent power that authorizes judges to impose fiscal sanctions upon those whose conduct is deemed to constitute an abuse of their right of access to the judicial system but which neither falls within the ambit of the various statutory vehicles for imposing sanctions nor fulfills the stringent requirements of a tort action for abuse of process or malicious prosecution. I find no basis for concluding that any inherent power to punish abuse of the judicial system not rising

to the level of contempt ever existed or was invoked at common law. Whatever the financial loss and the expenditure of effort in disposing of meritless actions, motions and appeals that are themselves inherent aspects of an adversarial system in a litigious society, I do not believe the remedy lies in the creation of a potentially vast new morass of motions and appeals in which the litigants and attorneys importune the courts to make ad hoc determinations imposing sanctions upon adversaries whom they believe to have acted improperly. A logical consequence of the exercise of such a power will be the routine demand for sanctions in pleadings, affirmations and affidavits in both civil and criminal litigation. Finally, I believe that the threat of unspecified sanctions may well impede the exercise of the right of access to the courts and may have a damaging impact on that continuing development which lies at the heart of the common law by discouraging the assertion of new and novel claims for recovery.

The courts of this State have long jealously guarded "the strong public policy of open access to the courts for all parties without fear of reprisal" (*Curiano v Suozzi,* 63 NY2d 113, 119). Indeed, it is clear that " '[o]ur public policy is very strong in allowing access to the courts to all parties [to the action]. Fear of reprisal beyond the imposition of costs should not be allowed to act as a deterrent' " (*Belsky v Lowenthal,* 62 AD2d 319, 323, *affd* 47 NY2d 820 *in part for reasons stated at App Div,* quoting dissenting opn of Steuer, J. in *Chappelle v Gross,* 26 AD2d 340, 345; *see also, Drago v Buonagurio,* 46 NY2d 778, 779-780). As a result, stringent limitations have been placed upon those proceedings which might otherwise have a chilling effect upon the exercise of that right (*see, Curiano v Suozzi, supra,* at pp 118-119).

Our system of justice provides a variety of carefully crafted remedies and sanctions for dealing with abusers of the system. The basic sanction, of course, is the contempt power as set forth and described in Judiciary Law article 19, discussed in more detail below. Additionally, in a proper case, a private party may seek to vindicate rights and obtain recompense through a malicious prosecution action (*see, e.g., Burt v Smith,* 181 NY 1, *writ of error dismissed* 203 US 129; PJI 3:50; *see also, Curiano v Suozzi, supra,* at p 118) or an abuse of process action (*see, e.g., Board of Educ. v Farmingdale Classroom Teachers Assn.,* 38 NY2d 397, 403; *Williams v Williams,* 23 NY2d 592). There also exist several statutory provisions which may be used as a basis for imposing limited sanctions in certain cases (*see, e.g.,* CPLR arts 81, 82, 83). Thus, in a number of contexts a court may punish abusive conduct by imposing sanctions for an improper

refusal to disclose or as a condition to granting discretionary affirmative relief to a party (*see, e.g., Renford v Lizardo,* 104 AD2d 717 [CPLR 3126]); *Piazza v Hastings Assoc.,* 103 AD2d 738 [CPLR 5015]). The limited application of such provisions, however, serves to prevent undue interference with the right of access to the courts.

Similar considerations underlie the reluctance of American jurisdictions to allow awards of attorney's fees to prevailing parties. As the Court of Appeals declared in *Mighty Midgets v Centennial Ins. Co.* (47 NY2d 12, 21-22): "In contrast with other legal systems, such as that in Great Britain, it has now long been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights (see, generally, *Alyeska Pipeline Co. v Wilderness Soc.,* 421 US 240, 247-259; *Fleischmann Corp. v Maier Brewing Co.,* 386 US 714, 716-717; Goodhart, Costs, 38 Yale LJ 849, 873-874). Though not exempt from criticism (see Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Cal L Rev 792), this practice reflects a fundamental legislative policy decision that, save for particular exceptions (see, e.g., CPLR 8303) or when parties have entered into a special agreement (*Tyng v American Sur. Co.,* 174 NY 166), it is undesirable to discourage submission of grievances to judicial determination and that, in providing freer and more equal access to the courts, the present system promotes democratic and libertarian principles (see McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn L Rev 619, 641)."

Despite this strong public policy of encouraging and ensuring open and unimpeded access to the courts, the majority of my colleagues have concluded that there exists an immense and undefined inherent judicial power, seemingly bounded only by constitutional restraints, to impose unspecified monetary sanctions upon attorneys or litigants who engage in conduct which is deemed by a particular judge to be abusive or negligent, such as filing a frivolous lawsuit or appeal or making a meritless motion. The determination of just what type of conduct warrants the imposition of a sanction, the amount of the sanction, whether it is to be imposed on the attorney or the litigant, and whether it is to be paid to the court or the opposing party must of necessity be left largely to the discretion of the individual judge. No limitation is placed upon the amount of the sanction, no clear guidelines are established for its exercise, and only the vaguest suggestions as to appropriate procedural safeguards are made. Thus, by a simple act of jurisprudential legerdemain, my col-

leagues have sidestepped the many restrictions normally imposed upon procedures tending to limit access to the courts and effectively rendered the statutory and common-law restrictions mere precatory admonitions.

No longer will a defendant who feels he has unjustly been sued be limited to recover damages for malicious prosecution or abuse of process, despite an unbroken line of precedent holding that these are his only remedies (*see, e.g., Curiano v Suozzi, supra; Drago v Buonagurio, supra*). Rather, he need merely persuade a judge that the case is frivolous and he may then request the imposition of sanctions to recompense him for his losses. Moreover, such damages may be assessed against an attorney who has acted negligently, despite the well-settled rule that "when baseless legal proceedings are instituted by a lawyer on behalf of a client, the courts have not recognized any liability of the lawyer to third parties therefor where the factual situations have not fallen within one of the acknowledged categories of tort or contract liability" (*Drago v Buonagurio, supra,* at pp 779-780).

Also troubling is the fact that frivolity, like beauty, is often in the eyes of the beholder. An action or motion which may appear frivolous to one judge may in fact be the beginning of a new development in the law. Many causes of action and procedures which are commonplace today would at one time have been deemed frivolous. For example, prior to the swift demise of the citadel of privity (*see, Codling v Paglia,* 32 NY2d 330, 338-339) and the dramatic growth of a cause of action in strict products liability (*compare, Escola v Coca Cola Bottling Co.,* 24 Cal 2d 453, 150 P2d 436, *with Greenman v Yuba Power Prods.,* 59 Cal 2d 57, 377 P2d 897), cases asserting such claims might well have been deemed frivolous. Another such example is the cause of action for negligent infliction of emotional harm, which has only recently found limited acceptance by the Court of Appeals (*see, Bovsun v Sanperi,* 61 NY2d 219). In a similar vein, prior to *Dole v Dow Chem. Co.* (30 NY2d 143), a claim for contribution by an active tort-feasor would have been considered nonsensical (*see, e.g., Jackson v Associated Dry Goods Corp.,* 13 NY2d 112). Indeed, the day is not long past when a claim that a woman was entitled to choose to have an abortion, that a couple was entitled to a certain degree of sexual privacy, or that a person had a right to attend an integrated public school would have been summarily rejected. Yet it is as a result of the constant influx of novel claims, innovative procedures and fresh ideas that our common law grows and flourishes. Without them, it must inevitably stultify and decay.

I fear that this unbridled power now recognized by my colleagues cannot but discourage creative advocacy, for to assert an unfamiliar claim will be to at least risk the imposition of a sanction by a court that might be too overwhelmed by the familiar litany of complaints to distinguish between the innovative and the absurd. Nor does the availability of an appeal diminish the chilling effect of this power to sanction, for an appeal will carry its own threat of an additional sanction — after all, if the original act is indeed found to have been properly classified as frivolous or abusive, would not an appeal from that determination also be frivolous or abusive by definition? Thus, on policy grounds alone, I cannot concur in my colleagues' recognition of this sanction power.

Even aside from these fundamental concerns, however, I must take issue with the very foundations of the majority's determination that the courts have an inherent power "to require an abusive or neglectful litigant or attorney to pay a sum of money to the opposing party, when such party has suffered by reason of the abusive conduct; alternatively, the Judge may direct that such payment be made directly to the court, when it appears that the efficient disposition of the business before it has been impaired by reason of the conduct in question". If there ever was an inherent power to act against errant lawyers or litigants, it derived from the power to punish for contempt, at one time limited only by constitutional restraints and now preempted by the Legislature (*see,* Judiciary Law art 19; *Sherwin v People,* 100 NY 351; *Matter of Barnes,* 204 NY 108; *Dollard v Koronsky,* 67 Misc 90, *affd* 138 App Div 213, *affd* 199 NY 558).

Although the majority purports to distinguish this power from the contempt power, the latter has traditionally been used to effectuate the two purposes enunciated by the majority as the aim of this new-found power to impose sanctions. Thus, a civil or private contempt proceeding is designed to protect private parties from behavior which interferes with their rights as litigants (*see, Matter of Watson v Nelson,* 69 NY 536; *People ex rel. Munsell v Court of Oyer & Terminer,* 101 NY 245; *Matter of McCormick v Axelrod,* 59 NY2d 574, 582-583; Judiciary Law § 753), while punishment of criminal or public contempt is utilized to protect the public interest in the administration of justice (*see, People ex rel. Munsell v Court of Oyer & Terminer, supra; King v Barnes,* 113 NY 476; *Matter of Katz v Murtagh,* 28 NY2d 234; Judiciary Law § 750). Fines imposed for civil contempt are intended to recompense the private party for actual losses and are thus limited in amount to the actual loss, or, in cases where no actual loss can be proven, to $250 plus costs and

expenses (*see,* Judiciary Law § 773; *State of New York v Unique Ideas,* 44 NY2d 345). Fines for criminal contempt, in contrast, are punitive in nature and are generally limited to a maximum of $250 (*see,* Judiciary Law § 751; *In re Nevitt,* 117 F 448). Either form of contempt may also result in incarceration where appropriate.

At common law, courts were deemed to have extremely broad contempt powers (*see, Nye v United States,* 313 US 33; *People ex rel. Munsell v Court of Oyer & Terminer, supra*), although the true extent and origin of those powers has occasionally been called into question (*see,* Fox, *The King v. Almon,* 24 Law Q Rev 184, 266). That the power to sanction now discovered by the majority is no more than the traditional contempt power under a new guise becomes evident when one considers the wide range of conduct covered by the common-law contempt power. For example, conduct found to be contemptuous by the ancient English common-law courts included the procurement of an "impertinent writ", returning an otherwise valid writ on the wrong day, and suing out a writ without foundation (Fox, *The Summary Process to Punish Contempt,* 25 Law Q Rev 238, 241, 354, 356). Interestingly, it appears that although the contempt powers of the Courts of Chancery were viewed as a necessary extension of the royal prerogative, much of the contempt powers of the common-law courts were initially granted by statute (*see generally,* Fox, *The Summary Power to Punish Contempt,* 25 Law Q Rev 238, 354; Fox, *The King v. Almon,* 24 Law Q Rev 184, 266).

Similarly broad contempt powers have also been exercised by the courts of our Nation. A comprehensive compilation of such cases is to be found in Stewart Rapalje's Treatise on Contempt (NY 1890). Illustrative of the scope of the contempt power are cases in which a party was held in contempt for conduct such as commencing an action that did not present an actual case or controversy, commencing an action in replevin to regain property which had been attached or which was in the custody of a court officer, suing an incompetent without permission of the court, commencing an action in a county court upon a claim previously rejected in a suit in a Court of Chancery (Rapalje, Contempt § 25 [1890]) and serving process in the actual or constructive presence of the court (Rapalje, *op. cit.* § 23, at 28). In light of the broad range of this traditional contempt power, I find it impossible not to conclude that the power to impose fiscal sanctions now recognized by the majority, if it exists at all, must be merely a part of the contempt power.

So viewed, the courts are not free to exercise that power in the manner envisioned by my colleagues, for it is now beyond

dispute that whatever inherent power of this nature the courts may once have enjoyed, it has long been sharply restricted by statutes that not only limit both the type of conduct punishable as contempt (Judiciary Law §§ 750, 753; *Matter of Watson v Nelson,* 69 NY 536, 543; *People ex rel. Munsell v Court of Oyer & Terminer,* 36 Hun 277, *affd* 101 NY 245, *supra; Rutherford v Holmes,* 5 Hun 317, *affd* 66 NY 368; *Dollard v Koronsky,* 67 Misc 90, *supra*) and the extent of permissible punishment (Judiciary Law §§ 751, 773, 774; *Sherwin v People,* 100 NY 351, *supra*), but also establish certain procedural protections for those against whom that power is brought to bear (*e.g.,* Judiciary Law §§ 752, 754, 755, 756, 778).

If, as I believe to be true, the power to impose sanctions for abusive practices is merely a variety of the contempt power, then the sanction power is aimed at conduct which would be punishable as contempt were it not for the limitations found in Judiciary Law article 19. Thus, the necessary implication of my colleagues' conclusion is that the Legislature's intrusion into the area of contempt is not preemptive and that some varieties of contempt still exist that have not been covered by article 19, that the sanctions that may be imposed also are not limited by article 19, and finally that the determination of the contempt and the imposition of the sanctions are not restricted by the procedural safeguards of article 19.

Although it may well be that there are certain inherent powers of a constitutionally established court which cannot be impaired by legislative action, the mere fact that a power was once deemed inherent does not preclude legislative limitation upon or negation of that power (*see, People v Carter,* 63 NY2d 530; *People v Douglass,* 60 NY2d 194, 201, 206; *Cohn v Borchard Affiliations,* 25 NY2d 237, 249; *cf. People v Minaya,* 54 NY2d 360; *Riglander v Star Co.,* 98 App Div 101, *affd* 181 NY 531). The theory that there exists a vast source of inherent judicial power has suffered considerable setbacks in recent years, with the Court of Appeals concluding that it does not include a power to dismiss a case (*People v Douglass, supra*) or to set aside a verdict (*People v Carter, supra*) unless granted by statute. If an inherent power other than contempt existed under common law to impose sanctions upon those who abused the procedures of our judicial system (*see,* Fox, *The Summary Process to Punish for Contempt,* 25 Law Q Rev 238, 354), I find practically no evidence that the power was ever exercised. Thus, centuries of legal history have passed — and millions of meritless procedures have been undertaken — and no one can really point to the exercise of an inherent power short of contempt to punish for that conduct.

If this newly discovered power is indeed some sort of contempt power that existed at common law, it cannot survive the enactment of Judiciary Law article 19. It is long-settled law that conduct that might have been contemptuous at common law may not be punished as contempt if it does not come within the provisions of the statutes (*see, e.g., Rutherford v Holmes,* 66 NY 368, 371, *supra; Briddon v Briddon,* 229 NY 452, 457). But my colleagues now indicate that the offending conduct may not fall within the contempt statute because it is something short of contempt. If that is so, it is interesting that under the inherent powers concept now adopted by this court without the procedural protections required for a finding of contempt, a fine can be imposed which is greater than that which could be imposed if the offending conduct fell within the contempt statute.

In short, the "inherent power" which supposedly supports the authority to impose sanctions is precisely that power that the contempt statutes limited. Those limitations having long been recognized as an effective restraint upon the power of the judiciary, the courts of this State no longer have the authority to impose sanctions that are not authorized by the contempt statutes or some other legislative enactment. This principle was succinctly expressed over a century ago in *Rutherford v Holmes* (5 Hun 317, 319, *affd* 66 NY 368, *supra*) in which the court declared of the contempt power that: "It cannot therefore be extended, in the least degree, beyond the limits which have been imposed by statute. No implication, and no fancied necessity, can be permitted to add to the literal meaning of the words by which the legislature have restricted this power."

The absence of this power to impose fiscal sanctions will hardly leave the courts defenseless against abusive practices, for, as discussed above, there exist several remedies for such behavior. Thus, the civil contempt power, although limited by statute, is still an extensive one. In addition to listing several specific types of misconduct as contempt, Judiciary Law § 753 (A) (8) grants a court of record the power to penalize:

"a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases * * *

"8. In any other case, where an attachment or any other proceeding to punish for a contempt, has been usually adopted and practiced in a court of record, to enforce a civil remedy of a party to an action or special proceeding in that court, or to protect the right of a party."

Hence, any conduct which was punishable as civil contempt under the common law and which falls within the broad language of this provision may still be punished as contempt (*see, e.g., People ex rel. Platt v Rice,* 144 NY 249, 263-264).

If the majority's sudden invocation of an inherent power to punish represents a response to a judicial crisis, it is curious that those charged with management of the judicial system have not proposed any Draconian remedy that would inflict financial penalties upon the bringers of meritless actions or proceedings at either the civil or criminal level. It is notable that the courts of other States have concluded that there exists no power to impose sanctions for abusive litigation practices (*see, e.g., Bauguess v Paine,* 22 Cal 3d 626, 586 P2d 942; *Berthelsen v Hall,* 194 NJ Super 22, 475 A2d 1275) thereby resisting in their own jurisdictions the impulse to attempt to resolve the problems of overburdened court systems by resort to inchoate and seemingly unbounded powers never before invoked. Should further consideration ever lead to the conclusion that there should be an embellishment of the judicial power to restrain litigation abuses, the remedy lies in carefully drawn legislation which will fix the limits of the power and provide for due notice and a hearing before any financial penalties are assessed (*compare, Bauguess v Paine, supra, with* Cal Code Civ Pro § 128.5). Otherwise, the unleashing of a vast and almost untrammeled power to inflict financial punishment upon those whose procedures seem baseless and frivolous to a particular judge cannot help but chill the efforts of those whose innovative and novel thoughts contain the seeds of the evolution of our law.

RUBIN and EIBER, JJ., concur with BRACKEN, J.; LAZER, J. P., concurs with a separate opinion.

Order of the Supreme Court, Suffolk County, dated November 10, 1983, reversed insofar as appealed from, as a matter of discretion, without costs or disbursements, and the provision imposing a fine upon defendant in the sum of $500 is deleted.