OPINION OF THE COURT
Arthur W. Lonschein, J.
The individual assignment system arrived in the courts of the State of New York on January 6, 1986. Its approach to calendar control and to increase efficiency in the disposition of cases rests on Uniform Rules for the New York State Trial Courts (22 NYCRR) § 202.3 (a): "There shall be established for all civil actions and proceedings heard in the Supreme Court and County Court an individual assignment system which provides for the continuous supervision of each action and proceeding by a single judge.” With these rules, there was given to each Trial Judge a nucleus of cases in various stages of pretrial postures, imposing on the Judge the obligation of case management with the end in view of disposing of his own cases with the maximum of efficiency. Indeed, a perusal of the rules bespeak of their objective; to expedite dispositions in matters before the court, by holding preliminary conferences where matters such as simplifying and limiting factual and *1092 legal issues are explored (22 NYCRR 202.12 [d] [1]), the establishment of a timetable to complete discovery (22 NYCRR 202.12 [d] [2]) and settlement at an early stage of the proceeding is to be discussed (22 NYCRR 202.12 [d] [4]). In order that the objectives of the preliminary conference be attained, the Chief Administrative Judge of the Courts has specifically authorized the Judges of the trial courts to impose "costs or such other sanctions as are authorized by law” against a party for failing to comply with the order resulting from the preliminary conference on the making of frivolous motions. (22 NYCRR 202.12 [g].) It appears, then, the rules recognize the inherent power of the courts to impose not only costs which are authorized by statute (CPLR arts 81, 82) but to impose sanctions on lawyers and parties for violation of the orders of the court or for impeding the orderly disposition of a court’s calendar.
The issue presented in this individual assignment matter is the extent of the court’s power to impose sanctions upon trial counsel for conduct which, while falling short of contempt, is dilatory and improper, and which wastes the time of the court and of opposing counsel, and frustrates the objectives of the individual assignment system. I conclude that the court has the inherent power to levy such sanctions, and that such sanctions must be imposed in a proper case, if the fundamental goals of the individual assignment system are to be achieved.
The facts may be simply stated. Counsel in this case announced their readiness to proceed to trial at the call of a Trial Calendar on January 21, 1986, and were directed to pick a jury on January 27. Voir dire occupied a full day. Late in the afternoon, counsel reported to me that a jury had been selected, and again announced that they were ready to proceed to trial.
The following morning, counsel for the plaintiff announced that the plaintiff was, in fact, unavailable, and made an application to have the jury disbanded and the trial adjourned for a number of weeks. It soon became clear that counsel had made no effort to contact his client until after the jury had been selected, and hence was unaware that the plaintiff had been injured in an automobile accident and was hospitalized. Since the client was blameless in this, I decided neither to force his counsel to trial without him nor to dismiss the complaint. Rather, I granted an adjournment, conditioned upon the payment of $250 to opposing counsel as compensa *1093 tion for his inconvenience and $500 to the Clients’ Security Fund of the State of New York.
Under prior practice, the result of counsel’s failure to ascertain the true status of his case would only have been inconvenience to the opposing counsel. This case would have been one of several wherein juries were being selected, and any trial parts coming open would have been assigned one of the other cases. Thus, sanctions would have been limited to redressing the inconvenience to opposing counsel.
Under the individual assignment system, however, the result is different. This case has been thoroughly conferenced and found not to be amenable to settlement. It had been set down for jury selection and trial in the expectation that it would occupy my part for a full week. In reliance upon counsel’s representations that this case was ready for trial, no other cases had been scheduled for the next few days. A series of telephone calls revealed that no other cases on any Trial Calendar could be advanced from the scheduled dates on such short notice. Thus, counsel’s inability to proceed left my part without a case on trial for three consecutive days.
The essence of the individual assignments system is the continuous supervision of each case by a single Judge (22 NYCRR 202.3 [a]). In order to manage his docket, each Judge is authorized to establish and control appropriate Trial Calendars (22 NYCRR 202.22). Judicial efficiency demands that, insofar as possible, each Judge should manage these calendars so as to have a case on trial at all times. Only in this way can maximal use be made of judicial resources, and the entire docket proceed as expeditiously as possible.
No court can schedule cases for trial properly if counsel for the parties does not convey accurate information about the status of his case. Counsel for the plaintiff should have known that his client was unavailable, and that his case was not ready. If he had informed the court of this at the call of the calendar, the trial would have been put over to a later date, and a different case scheduled in its place. Instead, opposing counsel was made to go through a useless jury selection process, and the court was subjected to unnecessary, frustrating and wholly avoidable delay in the movement of its calendar.
Imposition of monetary sanctions payable to opposing counsel is permissible when warranted (Gottlieb v Edelstein, 84 Misc 2d 1053; Gabrelian v Gabrelian, 108 AD2d 445). It has *1094 also been held that a monetary sanction may be ordered, payable directly to the court, when the improper conduct involves an impairment of the court’s "efficient disposition of [its] business” (Gabrelian v Gabrelian, supra, p 454; Campbell v Regency Towers, 76 Misc 2d 33). The court holds that actions, such as that of plaintiffs counsel herein which tend to frustrate the objectives and procedures of the independent assignment system, warrant the imposition of a monetary sanction, apart from and in addition to any sanction for the benefit of opposing counsel.
In Campbell v Regency Towers (supra, p 35) the court ordered a sanction payable "to the County Clerk for the benefit of the City of New York.” In Gabrelian the court spoke of ordering a payment "directly to the court” (108 AD2d 445, 454, supra). The difficulty, however, in ordering payment to the court is that such payment may not necessarily be used for court purposes. Funds paid to the clerk of the court go into the State’s general fund, like any other revenue collected by the State, and are used accordingly.
In order to fashion an appropriate sanction, which would benefit the objectives of the courts if not the court system itself, I decided that the $500 should be paid to the Clients’ Security Fund in the hope that other Judges, should they feel that a sanction is appropriate, would do likewise. The Clients’ Security Fund was established pursuant to the Laws of 1981 (ch 714) which provides, among other things, for the registration of attorneys by the Chief Administrator of the Courts upon the payment of a biennial fee of $100. Half of the moneys from these fees are transferred to the Clients’ Security Fund of the State of New York, to be used for the "purpose of maintaining the integrity and protecting the good name of the legal profession” by reimbursing claimants for losses caused by the dishonest conduct of attorneys. (State Finance Law § 97-t [4].) The statute provides that in addition to those fees, the fund may receive money "from any other fund or source, pursuant to law, including voluntary contributions” (State Finance Law § 97-t [2]). With the foregoing in mind, I communicated with Honorable Frederick Miller, the Executive Director and Counsel of the fund in Albany. Mr. Miller informed me that the fund would accept moneys ordered by a court as a sanction made payable to the fund.
In imposing such a sanction, I do not imply that the attorney for the plaintiff is guilty of the "dishonest conduct” mentioned by statute, but I do believe such a payment by an *1095 attorney whose conduct frustrates the court in its disposition of cases might perhaps lighten the load of other attorneys who do not indulge in such practices.
Payment of the above sanctions was received by the clerk of the part the following day and accordingly, the matter was adjourned to February 22,1986 for trial.