OPINION OF THE COURT
David B. Saxe, J.
On May 23, 1986, the case of Rubin v Locust Taxi, a garden *298 variety personal injury case, was on my Trial Calendar for jury selection. The plaintiff, seeking an adjournment of the trial, submitted an affirmation of engagement of her counsel which revealed that he was involved in jury selection in another matter in the Supreme Court, Bronx County.
My records revealed that this was the third instance that the Rubin case was scheduled for jury selection before me and my calendar was clear. I advised the bearer of the affirmation of engagement, a young attorney associate in plaintiff’s office, that I considered the attorney-of-record for Ms. Rubin to be the entire firm and that this individual lawyer’s involvement in another matter, under these circumstances, did not preclude me from assigning the case for immediate jury selection if another attorney in that firm was available.
The associate, who claimed that she had never tried a case before, advised me that Ms. Rubin was this particular attorney’s personal client and that he was the only attorney whom she wished to represent her. No affirmations of engagement were submitted for any other attorneys affiliated with plaintiff’s firm, which consisted of at least three partners and one associate. The affirmation confirmed his associates’ contentions.
At the request of the plaintiff’s representative, I conducted a hearing at which time all of the contentions were memorialized. I advised all sides that I believed that my interpretation of the individual assignment system (IAS) rules on attorneys’ engagement (Uniform Rules for NY St Trial Cts [22 NYCRR] part 125, eff Jan. 6, 1986), did not preclude me from ordering the trial to proceed and, accordingly, I ordered all sides to proceed to select a jury.
Undaunted, the plaintiff’s representative obtained the minutes of the hearing and obtained a stay of the trial from one Justice of the Appellate Division pending a hearing on a motion for a stay pending appeal.
Because of the consequences of this appellate action to the conduct of an IAS Trial Part, I have set down my interpretation of the IAS attorney engagement rules in this short decision. Further, I have pointed out that the plaintiff’s procedural path, if successful, would prevent the most interested party — the Trial Judge who is attempting to maintain an active and productive trial schedule from doing just that.
Uniform Rules (22 NYCRR) part 125 outlines criteria regarding the engagement of counsel. Priority "to the extent *299 lawful and practicable” shall be given to actions and proceedings in this order:
"1) child protective proceedings;
"2) criminal proceedings or juvenile delinquency proceedings wherein the defendant or respondent is incarcerated;
"3) proceedings based on acts which constitute felonies;
"4) proceedings based on acts which constitute misdemeanors; and
"5) civil actions and proceedings”. (§ 125.1 [c].)
The rule also provides for the Trial Judge to take into consideration exceptional circumstances where, in particular, there are four or more attorneys engaged for a trial or hearing or appellate argument. (§ 125.1 [d] [1].)
And, finally, subdivision (g) provides that where the parties have consented to a trial date at least two months in advance the designated attorney must appear for trial on that date or substitute trial counsel must be produced. If neither trial counsel nor substitute trial counsel is ready to try the case on the scheduled date, the court may impose any sanctions permitted by law. (§ 125.1 [g].)
Prior to enactment of IAS, Trial Judges’ discretion in matters concerning trial adjournments was repeatedly upheld. Absent a clear abuse of discretion, the conduct of a trial, including adjournments, was within the discretion of the trial court. (Di Stephan v Di Stephan, 106 AD2d 603; Matter of Case, 24 AD2d 797.)
Since IAS, at least one court has had the occasion to interpret the IAS rules regarding trial adjournments and affidavits of engagement. In Rodriguez v Westco Realty Co. (133 Misc 2d 283), respondent’s attorney failed to appear for the second day of trial and the court granted a motion for default judgment against the respondent. On a motion to vacate the judgment, respondent’s attorney explained that he had been actively engaged in another proceeding in Kings County. However, the excuse was not sufficient to vacate the default judgment. And, the court underscored the need for trial courts to maintain their Trial Calendars and to expect lawyers to adhere to that schedule, and to comply with the IAS rules. (See, McLoughlin v Henke, 130 Misc 2d 1091 [Sup Ct, Queens County 1986].)
The Bronx proceeding was already underway and therefore I could not direct that particular attorney to appear on this *300 matter. However, to my knowledge, the remaining attorneys in the firm were not engaged in other trials. Pursuant to the IAS rules, the entire firm or at least four attorneys in that firm should have also been engaged in order to have justified the need for an adjournment. This was not the exceptional circumstance that was contemplated in section 125.1 (d) (1). Therefore, it was incumbent on at least one of the other attorneys to be prepared for trial. However, plaintiff’s representative reiterated to the court that neither she nor any other attorney in the firm could try the case; that the court would have to wait for the Bronx matter to end.
After plaintiff’s firm refused to proceed to trial, I tried to reactivate my courtroom by rescheduling the trials that were on the calendar for the following week. However, these law firms were not prepared to commence a trial on an earlier date. They relied on the court to adhere to its own trial schedule. Therefore, my courtroom remained unutilized for two days.
Furthermore, after the stay was granted, I was unable to reschedule the Rubin matter with any degree of certainty. I was bound by the stay until either the Appellate Division rendered a decision on the underlying motion or until plaintiff’s attorney was available. Because the stay was virtually for an indefinite period, both the Rubin trial and my Trial Calendar were "in limbo”.
Although the Rubin matter is only one instance, if stays are granted by the Appellate Division more frequently, it can severely impede the success of the individual assignment system. This system became effective on January 6, 1986. Prior to IAS, a case would enter the system, and would travel through various parts of the master calendar system. The Justice who presided in each part, be it a motion, precalendar, conference, or Trial Part had virtually little impact on distributing or scheduling cases. In other words, there was little personal control over one’s calendar. However, a Judge had little need for personal control over the Part Calendar because there was a constant stream of cases which flowed to and from each part. Many opponents of this master calendar system claimed that the judicial process was too slow, largely because Judges were not responsible for monitoring their own case loads.
In response, the IAS system was implemented. The goal was to streamline the existing system and thereby eradicate the *301 delays. The general consensus was that the success of IAS was dependent upon the quick and judicious resolution of cases. As a consequence, under the current system, each Judge is completely responsible for all of the cases which are assigned to his part, from entry of the case into the system until its final disposition. Each IAS part compiles its own Motion Calendar and schedules its own conferences and trials.
Therefore, if on a particular day a trial which is scheduled to go forward is adjourned, the court is stymied. There is no longer a pool of cases from which another case can be directed to proceed to trial. As a result, a Judge may sit idle and a courtroom may remain unutilized.
There is an additional factor which should be considered here as well. My IAS part consists predominantly of lawsuits against the City of New York. The city assigns only two trial attorneys to this part and they must deal with a large volume of cases. In order to dispose of cases quickly, these attorneys must know the files and be prepared to proceed to trial. They pattern their trial schedule on my trial schedule. If I am compelled to juggle my trial schedule, so must they. However, the court does not have to prepare a case for trial; the attorneys do. And, therefore, they cannot simply juggle their trials. They need time to prepare and during that time the court cannot proceed. A courtroom that is unproductive translates into a system that is not successful.
Unfortunately, when the Appellate Division granted an interim stay, these important considerations were not raised before the court. Nor, in fact, will they be raised at all. The defendants in this personal injury action did not oppose the stay nor will they present any meaningful opposition on the return date of the motion. So, the appellate court will not, it appears, realize the more subtle implication of the granting of such stays which is the disruption of the functioning of an IAS part.
However, were this procedure to become routine trial practice, it would undoubtedly cripple the IAS. Therefore, the real parties in interest on motions such as these are really those who are primarily concerned with the success of the IAS system: the court and the Office of Court Administration. If the plaintiff had commenced a CPLR article 78 proceeding and named me as a respondent, the Office of the State Attorney-General would have appeared and been able to raise these important policy considerations.
*302 An article 78 proceeding was not commenced and the record before the Appellate Division did not present these interests. There is no advocate of the position of the Trial Judge, who, it is submitted, must be permitted the freedom and discretion to maintain an active trial program.
On a Friday at 3:00 p.m., only two days after the stay was granted, plaintiffs attorney telephoned my courtroom. He advised the court that the Bronx proceeding was concluded and that he was going to appear Monday morning to commence jury selection. However, Monday is my motion and conference day. My calendar contained at least two trials on each available day through the end of November 1986. When the court advised him of these facts, plaintiffs attorney became angry and disappointed, and claimed that the court was punishing him. He was advised that one day’s notice was not enough time to contact all of the attorneys on the other cases which now had to be juggled. However, an attempt was made to accommodate him and he was offered a date for trial at the end of August.